## STETSON SHOE CO v PROCTOR HALL CO et

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 6, 1934

M. A. Nadler, Youngstown, for plaintiff.
Manchester, Ford, Bennett & Powers, Youngstown, M. Mendelssohn, Youngstown, and David Shermer, Youngstown, for defendants.

## OPINION

By LYNCH, J.

As we view it, stated tersely, the question presented for our determination is whether there is a binding legal agreement between said Dollar Savings & Trust Company and the George E. Keith Company, under which this court can and should order and decree that said receiver, out of

the dividends which the Keith Company would otherwise be entitled to receive on its certain notes, amounting to $19,888 pay to said bank the balance due it of $6,006.06, plus interest.

We find from the record and the evidence that in the spring of 1930 the Proctor Hall Company was heavily indebted and in need of financial assistance to take care of its seasonal requirements, and it advised said bank that if it would loan said company the necessary funds, the Stetson Shoe Company, which held its own demand note for about $7,000, and the Keith Company, which also held its own demand note in the sum of $10,000, would consider their notes as secondary to the loan of the said bank. Thereupon the Stetson Shoe Company wired said bank, on April 12, 1930, as follows:

"Dollar Savings & Loan Co.,
Youngstown, Ohio.
Attention: M. E. Dennison.

Will subordinate old note indebtedness Proctor Hall Company to your loan made that company can take discounts. Letter follows.
The Stetson Shoe Company, Inc."

This was followed by a letter, which it is not necessary for the purposes of this opinion, to read. Similar letters and telegrams were sent by the Stetson Shoe Company to said bank up to and including the spring of 1931. For the same period, similar letters were written by the George E. Keith Company to said bank, up to and including the spring of 1931. On September 9, 1931, the Stetson Shoe Company seems to have dropped out of the picture. The record further shows that on September 9th, 1931, all prior loans made by said bank to said Proctor Hall Company, in pursuance of said agreements, if there were binding agreements with the Keith Company and the Stetson Shoe Company, had been fully paid, and on said date the Keith Company wrote said bank the following letter:

"Brockton, Mass.
September 9, 1931.
The Dollar Savings & Trust Co.,
Youngstown, Ohio.
Attention of Mr. Dennison.
Dear Mr. Dennison:

We have just received a letter from Mr. Hall of the Proctor-Hall Company, your city, saying that shortly he would be requiring his usual season loan at the bank, and wanted us to write you as in times past. Therefore, we write that we agree to consider our note against the Proctor Hall Company as secondary to your own.
Yours very truly,
George E. Keith Company."

Now, it appears further from the record that on September 23, 1931, the Dollar Savings & Trust Company loaned to the Proctor Hall Company $7,000, for a period of 90 days; that several payments were made thereon, and that there remains an unpaid balance on said loan of $6,006.06, plus interest.

We find from the record and the evidence, and when we say evidence we include all of said letters and telegrams in the record which were written and sent to the bank either by the Stetson Shoe Company or the Keith Company, that there was an agreement at the time of the making of said $7,000.00 loan between the Keith Company and said bank under which the note or notes of the Keith Company, executed to it by the Proctor Hall Company, were made secondary, so far as payment was concerned from the assets of the Proctor Hall Company to the notes of said bank covering its said loan of $7,000, being the usual seasonal loan to said Proctor Hall Company.

It has been argued to us with great force that the letter of September 9th, 1931, did not create a contract or agreement; indeed, that there was no consideration to support an agreement, if one existed. In our judgment there was sufficient consideration. What was the consideration? In the beginning the Proctor Hall Company was heavily indebted. The George E. Keith Company was one of its large creditors, and likewise the Stetson Shoe Company, and it has a place in the consideration of the evidence in this case. In addition, both the Keith Company and the Stetson Shoe Company were engaged in the shoe business. It is only reasonable and fair to presume that the Proctor Hall Company was a customer of both of these shoe companies. They were anxious for the Proctor Hall Company to continue in business, vitally interested in the Proctor Hall Company paying their claims and notes. In addition, all of these loans were made by this bank to the Proctor Hall Company for what purpose? For the purpose first of discounting its bills, taking advantage of the cash discount. This would enable the Proctor Hall Company, both as the Keith Company and the Stetson Company believed, to have in its hands the means to

discount its bills and provide a surplus for the payment of its creditors.

Without further discussion, in our opinion, there was sufficient consideration for the agreement. Now, what is meant by the word **"secondary"**? This letter of September 9th, 1931, reads the note of the Keith Company is to be made, "secondary" to the loans of the bank. What is meant by the use of the word "secondary" in the agreement? We should bear in mind in determining the meaning of this term or word "secondary" that the same was not being used by lawyers, but by educated, trained business men. Therefore, we conclude it was used in its ordinary sense, the sense in which a business man would use it. We find that the word "secondary" as here used by the parties, means and was intended to mean that the said note or notes of the bank were to be paid by or out of the property of the Proctor Hall Company, prior to the note or notes of the Keith Company. Insofar as the payment of the Keith note or notes were concerned, the same were to be paid, in our judgment, following payment of said notes held by the bank; that is to say, subsequent thereto. When a thing is "secondary" it is subsequent, it comes after the thing to which it is secondary. Obviously the said notes of the Keith Company could only in fact be made secondary to those of the bank by the former; that is, the Keith Company, waiving any claim it would otherwise have to the assets of the Keith Company until after the said notes of the bank were paid. We believe this was the intention of the parties here involved, and the agreement between them.

It was also claimed in argument that the notes of the bank for the usual seasonal loan for the Proctor Hall Company were renewed and that the agreement would not cover renewal notes. We are of opinion that this agreement covered notes for such usual seasonal loans, whether original or renewal, and would remain effective as to both until the same are paid in full.

It is also claimed, and we assume it as a fact, that the Keith Company, at the time it wrote the letter of September 9, 1931, held three notes of the Proctor Hall Company, amounting to $19,800, whereas it is stated in said letter of that date as follows:

"We agree to consider our note as secondary to your own."

The word "note" being in the singular, We construe the word note, as used in this letter, under the evidence in this case, to mean and include all of said notes of the Keith Company. In other words, it was the intention that the waiver would enable the bank to pursue and take whatever of the assets of the Proctor Hall Company were necessary to repay it, before the Keith Company would have, a right to any part of the same. It is clear that this agreement, and we construe it as a valid one, created no liability whatsoever on the part of the Keith Company, to the bank itself, or in favor of the bank, other than the right, as we hold, to have the dividends of the Keith Company accruing on its notes of the Proctor Hall Company under the receivership, first paid to the bank in satisfaction of the balance due it on its said usual seasonal loan to the Proctor Hall Company. The Keith Company, of course, is neither surety or guarantor of the Proctor Hall Company.

We observe that the learned and industrious counsel for the Keith Company say they have only been able to find one case similar to the one at bar, being that of In re Howard P. Geddes, Bankrupt, 1 A. B. R. (N.S.) 731. It is claimed that the rule announced in that case, to the effect that where a debtor is adjudicated a bankrupt or goes into receivership, all agreements made by him, the bankrupt, or the person placed under receivership, whereby one obligation is to be paid to another, become impossible of completion by operation of law. The instant case, we observe, is not one of that kind. The preference here was not created by the Proctor Hall Company, the failing debtor, but by an agreement of one of its creditors upon a sufficient consideration, and in our opinion is not changed or affected by reason of bankruptcy or receivership. It exists now as it would have existed, in our judgment, if the bankruptcy or the receivership had not resulted.

We are not citing authorities in this opinion, as the case is decided in the main on the underlying principles of contracts, and it would not be helpful to counsel to state those principles.

It follows from what we have said that a judgment will be rendered, and is rendered in favor of the Dollar Savings & Trust Company on its answer and cross petition, ordering and decreeing that sufficient of the dividends otherwise payable to the Keith Company on the said notes be paid by said receiver to said bank in satisfaction of the balance due on its said $7,000.00 loan to the Proctor Hall Company, including interest. This judgment does not in any way affect the dividends on the large sum

claimed by the Keith Company against said the Proctor Hall Company other than on its said notes.

If a motion for a new trial be filed the same is overruled, and exceptions noted.

FARR and ROBERTS, JJ, concur in the judgment.