[Cite as *Garlock v. Silver Dollar Camp*, 2021-Ohio-1690.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

PATRICIA A. GARLOCK, ET AL.,

                                         CASE NO. 5-20-35

    PLAINTIFFS-APPELLANTS,

    v.

SILVER DOLLAR CAMP, ET AL.,           O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2019 CV 300

Judgment Affirmed

Date of Decision: May 17, 2021

APPEARANCES:

    *Bret A. Spaeth* for Appellants

    *Matthew T. Kemp* for Appellee Walter Adeler

**WILLAMOWSKI, P.J.**

{¶1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary judgment entry.

{¶2} Plaintiff-appellant Patricia A. Garlock ("Patricia"), individually and as executrix of the estate of Todd J. Garlock, appeals the judgment of the Hancock County Court of Common Pleas, alleging that the trial court erred in finding that the defendant-appellee Walter Adeler ("Adeler") (1) could continue the business of the Silver Dollar Camp and (2) could buyout a deceased partner's interest in the business pursuant to the terms of the partnership agreement. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶3} In 1987, Todd Garlock ("Todd"), Shannon Clark ("Clark"), Joe Umbs ("Umbs"), and Randy Peters ("Peters") agreed to form a partnership called the Silver Dollar Camp. Doc. 28. Through this partnership, these individuals intended to purchase a one-hundred-acre tract of land in New York and then operate a hunting resort on this property. Doc. 28. On August 3, 1987, Todd, Clark, and Umbs signed a partnership agreement.[1] Doc. 28. Todd, Clark, Umbs, and Peters then effectuated the purchase of the property in New York. Doc. 28.

---

[1] The original copy of this partnership agreement has not been located. Doc. 28. However, a copy of the partnership agreement was filed with the trial court. Doc. 28, Ex. A. This copy is signed by Todd, Clark, and Umbs. Doc. 28, Ex. A. For some reason, the signature line for Peters was blank on this copy. Doc. 28, Ex. A. In this action, neither party disputes that the partnership agreement that was filed with the trial court

{¶4} On December 28, 1987, Peters passed away, leaving Todd, Clark, and Umbs as the remaining partners of the Silver Dollar Camp partnership. Doc. 28. Peters's interest in the partnership was later transferred to the remaining partners. Doc. 28, Ex. B. Subsequently, Clark decided to withdraw as a partner, and Clark's interest in the partnership was transferred to Adeler. Doc. 28. On February 27, 1989, Todd, Clark, Umbs, and Adeler signed an agreement that addressed the terms of Clark's withdrawal from the partnership. Doc. 28, Ex. E. Clark, Todd, and Umbs also conveyed their individual interests in the property to the Silver Dollar Camp partnership. Doc. 28, Ex. D.

{¶5} In June of 2000, Umbs withdrew as a partner. Doc. 28. After paying Umbs the amount of his capital contribution, Todd and Adeler decided to continue the business as the only partners in the Silver Dollar Camp partnership. Doc. 28. On August 15, 2007, Todd married Patricia. Doc. 28. On August 4, 2018, Todd passed away. Doc. 28. Patricia then became the executrix of Todd's estate. Doc. 1. On September 27, 2018, Adeler sent Patricia a notice of intent to purchase Todd's interest in the partnership for the amount of Todd's capital contribution pursuant to Article XIII of the partnership agreement. Doc. 28, Ex. G.

was, in fact, the agreement that governed the Silver Dollar Camp partnership. Doc. 28. Rather, the parties dispute what portions of the partnership agreement remain enforceable after Todd's death.

**{¶6}** On August 9, 2019, Garlock filed a complaint with the trial court in her individual capacity and as the executrix of Todd's estate. Doc. 1. In this complaint, she requested the judicial dissolution and winding up of the business partnership, including the sale of the property in New York. Doc. 1. On October 15, 2019, Adeler filed an answer and counterclaim. Doc. 20. He requested specific performance of the agreement. Doc. 20.

**{¶7}** On February 26, 2020, the parties filed a stipulated set of facts and a copy of the Silver Dollar Camp partnership agreement. Doc. 28. On February 27, 2020, Patricia filed a motion for summary judgment. Doc. 29. On February 28, 2020, Adeler filed a motion for partial summary judgment. Doc. 30. The dispute between the parties concerns the enforceability of several provisions of Article XIII in the Silver Dollar Camp partnership agreement. These disputed provisions read, in their relevant parts, as follows:

**XIII. DISSOLUTION, WINDING UP; LIQUIDATION**

**A. Causes of Dissolution. The partnership shall be dissolved on the happening of any of the following events:**

**\* \* \***

**3. Death, disability, or bankruptcy of any partner; \* \* \***

**\* \* \***

**B. Right to Continue Business After Dissolution. On dissolution of the partnership, the remaining partners shall have the right to elect to continue the business of owning, operating, and maintaining the real estate of the partnership under the same**

**name, by themselves, or with any additional persons they may choose.  * * *.**

**C.  Payment If Partnership Continued After Dissolution.  If, on dissolution, the remaining partners elect to continue the partnership under Article XIII(B), they shall pay to the withdrawing, or expelled partner, or the estate of the deceased partner, the value of the partner's interest as determined in Article XIII(D), as of the date of dissolution.  Such payment shall be made within six (6) months of dissolution.  It is specifically agreed that on the death of any partner, an inventory and appraisal of the partnership property and sale of the deceased partner's interest in the partnership, as provided by the Ohio Revised Code, shall be dispensed with, and that in lieu of the mode for the settlement of such deceased partner's interest and disposition thereof provided for in Sections 1779.04 and 1779.06 of the Ohio Revised Code, such deceased partner's interest shall be settled and disposed of solely under the provisions of this agreement.**

**D.  Value of Partner's Interest.  In the event any partner resigns from the partnership, or dies during the continuance of this Agreement, or disassociates themselves from the partnership for any reason, including expulsion, the remaining partners shall have the right to purchase the interest of the former partner by paying for such interest the value determined as being the partner's capital contribution * * *, provided that written notice of such intention to purchase shall be served by the remaining partners upon the former partner, his heirs, executors, administrators, or assigns within sixty (60) days after such partner disassociates himself from the partnership for any reason. * * *.  During such sixty (60) day period the former partner, his heirs, executors, administrators, and assigns shall have no right in the partnership.**

Doc. 28, Ex. A.

{¶8} Patricia argued that the provisions in Article XIII(B), (C), and (D) became unenforceable when the partnership dissolved upon Todd's death.  Doc. 29.

In response, Adeler argued that Todd's death did dissolve the partnership but did not render the provisions in Article XIII(B), (C), and (D) of the partnership agreement unenforceable. Doc. 30. Thus, he argued that he had the right to continue the partnership pursuant to Article XIII(B) and the right to purchase Todd's interest in the partnership pursuant to the terms set forth in the provisions in Article XIII (C) and (D). Doc. 30.

{¶9} On July 10, 2020, the trial court issued a judgment entry that denied Patricia's motion for summary judgment and granted Adeler's partial motion for summary judgment. Doc. 33. The trial court found that the provisions in Article XIII(B), (C), and (D) were enforceable and governed this dispute. Doc. 33. The trial court concluded that Adeler had the right to purchase Todd's interest in the partnership and the right to continue the business under Article XIII of the partnership agreement. Doc. 33.

*Assignment of Error*

{¶10} The appellant filed her notice of appeal on November 20, 2020.[2] Doc. 46. On appeal, Patricia raises the following assignment of error:

> **Plaintiff/Appellant [Patricia] Garlock, individually and in her fiduciary capacity, asserts that the trial court erred in finding that Appell[ee] Adeler was able to continue the business of the partnership after dissolution under Article XIII subsection (B),**

---

[2] Patricia filed a notice of appeal on August 6, 2020. Doc. 36. However, this Court dismissed this prior appeal for lack of a final appealable order in Case #5-20-26. On October 27, 2020, the trial court issued a Civ.R. 54(B) order that rendered its judgment entry of July 10, 2020 a final appealable order. Doc. 40. Patricia then filed notice of appeal on November 20, 2020 in Case #5-20-35. Doc. 46.

**and that the Buy Out provisions of subsections (C) and (D) are enforceable.**

Patricia argues that the language of the partnership agreement does not permit Adeler to continue the business or purchase Todd's interest in the partnership.

*Legal Standard*

{¶11} A partnership is "an association of two or more persons to carry on as co-owners a business for-profit * * *." R.C. 1776.01(M). As a general matter, a "partnership agreement governs relations among the partners and between the partners and the partnership." R.C. 1776.03(A). *See* R.C. 1776.01(N). "To the extent the partnership agreement does not otherwise provide, [Ohio's Uniform Partnership Act in R.C. 1776.01, *et seq.*] * * * governs relations among the partners and between the partners and the partnership." R.C. 1776.03(A). *See* R.C. 1776.01, *et seq.*

{¶12} "The construction of a written agreement is a matter of law for the court." *LublinSussman Group LLP v. Lee*, 2018-Ohio-666, 107 N.E.3d 724, ¶ 19 (6th Dist.).

> When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. 'As a matter of law, a contract is unambiguous if it can be given a definite legal

-7-

**meaning.'** *Westfield Ins. Co. v. Galatis*, **100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.**

*Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.

*Legal Analysis*

{¶13} On appeal, Patricia argues that this business may continue pursuant to Article XIII(B) only if multiple partners remain after a dissolution of the partnership. She points to the fact that Article XIII(B) uses plural language, stating that the "remaining *partners* shall have the right to elect to continue the business * * *." (Emphasis added.) Doc. 28, Ex. A. Since only one partner remained after Todd's death, Patricia asserts that Adeler cannot continue the business under the terms of Article XIII(B).

{¶14} Patricia's argument revolves around the use of plural language—"partners," "they," and "themselves"—in Article XIII of the partnership agreement. But in interpreting written agreements, Ohio courts have applied the following rule:

> **The singular and the plural forms [of terms] are often used in contracts interchangeably, and courts should construe the plural and singular forms interchangeably so long as such a construction is consistent with the evident purposes of the contract. * * * That principle obtains with even greater force where, as here, the noun number selected, plural or singular, is intended to cover hypothetical situations that have not yet arisen.**

(Brackets sic.) *Grange Life Ins. Co. v. Bics*, 9th Dist. Lorain No. 01CA007807, 2001 WL 1044081, *3 (Sept. 12, 2001), quoting *Ohio Development Co. v. Ellis*, 2d

Dist. Montgomery No. CA 10340, 1987 WL 18831, *5 (Oct. 22, 1987), citing

*Stetson Shoe Co. v. Proctor Hall Co.*, 17 Ohio Law Abs. 278, 281 (7th Dist. 1934).

*See also* R.C. 1.43 (stating that, in matters of statutory construction, "[t]he singular

includes the plural, and the plural includes the singular").

{¶15} In *Ohio Development Co. v. Ellis*, the Second District Court of

Appeals applied this rule in a factually similar case. *Ellis* at *4. In *Ellis*, three

partners operated the Ohio Development Company. *Id*. at *1. Two of the partners

decided to withdraw from this partnership. *Id*. The third partner, Thomas Williams

("Williams"), then announced his intention to purchase the interests of the

withdrawing partners.

> **Paragraph 14 of the [Partnership] Agreement provide[d] that upon a partner's withdrawal from the partnership, the remaining partners may either: (1) cause the partnership to buy out the withdrawing partner's interest; or (2) terminate or liquidate the partnership.**
>
> **Finally, paragraph 16 provide[d], in its entirety, as follows:**
>
> **'16. Purchase by Individual *Partners'***
>
> **'(a) If the Partnership declines to exercise any right which it may have under this Agreement to purchase the Partnership interest of any Partner, the other voting *Partners* may individually exercise such right of purchase on a pro rata basis, but only if such Partnership interest is thereby purchased in its entirety.'**

(Emphasis added.) *Id*. at *4. The trial court found that the wording of this

partnership "agreement did not contemplate the factual situation of the parties, i.e.,

a single partner attempting to purchase the interests of the other partners." *Id*. *3. The trial court ordered a liquidation of the partnership's assets. *Id*.

{¶16} However, Williams appealed the trial court's decision, asserting that the trial court's decision was inconsistent with the partnership agreement. *Ellis, supra*, at *4. On appeal, the Second District reversed the trial court's decision and held the following:

> **In our view, paragraph 16 clearly evidences an underlying purpose to permit any partner or partners who wish to do so to continue the business upon the withdrawal of a partner, without having to liquidate. The defendants argue that the phrase 'the other voting Partners' appearing in 16(a) shows an intent to limit the application of paragraph 16 to the situation where there are at least two partners left after the departure of the withdrawing partners, because of the use of the plural-'Partners.' We think this is reading too much into one word.**
>
> **\* \* \***
>
> **The partnership agreement clearly evidences an intent to permit partners remaining after other partners have withdrawn to continue to operate the business, rather than forcing the remaining partners to liquidate. We can think of no particular business reason for the partners to have intended to distinguish between the situation in which two or more partners remain and the situation in which only one partner remains to continue the business. Accordingly, we will not assume that the partners intended to make that distinction, in the absence of language in the partnership agreement clearly evidencing that intent.**

*Id*. *4-5. The Second District also found that "[t]he fact that the business cannot be continued in partnership form \* \* \* does not require liquidation." *Id*. at *5. We find the reasoning of the Second District in *Ellis* to be persuasive.

{¶17} Turning to the facts of the case before this Court, Article XIII(B) expressly provides for a right to continue the business after a dissolution. Doc. 28, Ex. A. This provision manifests a clear intention to allow the business of the partnership to continue after a dissolution. Doc. 28, Ex. A. But Patricia's interpretation of Article XIII(B) would limit this right, allowing *partners* to continue the business but requiring *a partner* to liquidate the business. Other than pointing to the plural language in this provision, she offers no other reason for this distinction.

{¶18} However, the context and wording of this provision give no indication that use of the word "partners" instead of "partner" was intended to impose a limitation on the right of a partner to continue the business. Further, no provision in the partnership agreement suggests that the application of the general rule on the interchangeability of singular and plural terms in a contract would be inconsistent with the purposes of this partnership agreement. *Ellis, supra*, at *5 (holding that "courts should construe the plural and singular forms interchangeably so long as such a construction is consistent with the purposes of the contract"); *Bics, supra*, at *3.

{¶19} If the parties to this agreement wanted to require a liquidation of the business in the event that only one partner remained at dissolution, they could have expressly included such a requirement in the partnership agreement. In the absence of some other evidence in the partnership agreement evidencing such a purpose, we will not assume that the original parties intended for the business to be liquidated in

this situation because Article XIII(B) uses the word "partners" instead of "partner." Doc. 28, Ex. A. Thus, we conclude that the plural language used in Article XIII(B) does not preclude Adeler from continuing the business.

{¶20} Patricia further argues that the buyout provisions in Article XIII(C) and (D) of the partnership agreement are inapplicable because the plural language in Article XIII(B) precludes a continuation of the business. In her brief, Particia admits that Adeler can buyout Todd's interest in the partnership pursuant to the provisions in Article XIII(C) and (D) if Article XIII(B) is found to be applicable in this case. Appellant's Brief, 10. Since we have determined that the plural language in Article XIII(B) does not preclude Adeler from continuing the business, Patricia's legal challenge to the applicability of the provisions in Article XIII(C) and (D) in this appeal also fails.

{¶21} For the reasons stated in our analysis, we conclude that Adeler has the right to continue the business pursuant to Article XIII(B) of the partnership agreement. Further, the buyout provisions in Article XIII(C) and (D) are enforceable. Thus, the trial court did not err in denying Patricia's motion for summary judgment or in granting Adeler's partial motion for summary judgment. As such, Patricia's sole assignment of error is overruled.

*Conclusion*

**{¶22}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Hancock County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**