[Cite as *Pierson v. White Pine Ins. Co.*, 2022-Ohio-2702.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY


RICHARD E. PIERSON, et al.,   :

    Plaintiffs-Appellees,   :   Case No.  21CA3

    v.                :

WHITE PINE INSURANCE COMPANY,  :   DECISION & JUDGMENT ENTRY
 et al.,

                                   :

    Defendants-Appellants.

_____

APPEARANCES:

Brian T. Winchester and Chad A. Schmitt, Cleveland, Ohio, for
Appellant.

Daniel J. Hurley and Mark Brookes, Columbus, Ohio, for
Appellees.

Michael R. Henry, Columbus, Ohio, for Third-Party Defendant-
Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-28-22
ABELE, J.

{¶1}   This is an appeal from a Highland County Common Pleas
Court summary judgment in favor of (1) Richard E. Pierson and
Hillsboro Scrap & Metal, Inc., plaintiffs below and appellees
herein,[1] and (2) United Financial Casualty Company, third-party

---

[1] For ease of discussion, this opinion refers to Pierson and
Hillsboro Scrap & Metal, Inc. (HSM), collectively as
"appellees," and refers to United Financial Casualty Company as

defendant below and appellee herein.

{¶2} White Pine Insurance Company, defendant below and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS-APPELLEES."

{¶3} This case arises out of a fatal March 2019 automobile accident. At the time of the accident, Pierson, while in the course and scope of employment with Hillsboro Scrap & Metal, Inc. (HSM), was driving a 1999 Freightliner semi-truck with an attached 2006 Transcraft trailer. The trailer carried a load of inoperable vehicles. Pierson's truck collided with a vehicle driven by Allen K. Ursell, along with passengers Shaun Rooker and Alesha Bennett. Sadly, the accident resulted in Ursell's death and injuries to the passengers.

{¶4} Appellant issued a commercial automobile insurance policy to HSM. After HSM notified appellant of the accident, appellant would not provide coverage for any claim that arose out of the accident, and further informed HSM that appellant "will likely not have a duty to defend or indemnify."

{¶5} Appellees, HSM and Pierson, filed a complaint and asked the trial court to declare that appellant's policy (1) provides primary liability coverage for the accident, and (2) appellant has a duty to defend and indemnify appellees for any

---

"UFCC."

claims arising out of the accident.  The passengers, Rooker and Bennett, also filed counterclaims for negligence, negligence per se, vicarious liability, negligent hiring and supervising, and punitive damages.  Ursell's estate filed counterclaims against appellees for negligence, wrongful death, vicarious liability, negligent hiring and retaining, and punitive damages.

{¶6}  Appellant filed an answer, along with a combined cross-claim, a counterclaim, and a third-party complaint for declaratory judgment.  Appellant alleged that UFCC issued an insurance policy to appellees that provides coverage for any loss arising out of the accident and requested the trial court to enter a declaratory judgment that (1) appellant's policy explicitly excludes coverage for any losses arising out of the subject accident, (2) appellant does not have a duty to defend or indemnify appellees, and (3) to the extent that appellant's policy provides coverage, UFCC's policy "is primary and the policies do not stack limits."

{¶7}  Subsequently, appellant requested summary judgment regarding its declaratory judgment request.  Appellees and UFCC also filed motions for summary judgment.

{¶8}  In its summary judgment motion, appellant asked the court for judgment in its favor regarding all claims set forth in appellees' complaint and in appellant's cross-claim, counterclaim, and third-party complaint.  Appellant argued that

its insurance policy explicitly excludes coverage for appellees' claims and, to support its argument, appellant referred to the policy's exclusion for the towing and transporting of autos. That language provides that coverage is excluded for "bodily injury" or "property damage" arising out of the use of any "auto that is not identified in ITEM SEVEN in the Auto Dealer Declarations used to move, tow, haul or carry 'autos.'" Appellant asserted that the policy defines "auto" as "a land motor vehicle, 'trailer' or semitrailer" and that a "'[t]railer' includes [a] semitrailer." Appellant claimed that, at the time of the accident, Pierson was driving a semi-truck, an "auto," and that Pierson used the semi-truck to move, tow, haul, or carry the attached trailer, also an "auto." Appellant further asserted that the trailer attached to the semi-truck was moving, towing, hauling, or carrying "autos" because the crushed pile of vehicles fell within the policy's definition of "auto," i.e., land motor vehicle.

{¶9} Appellant further argued that neither the semi-truck, nor the attached trailer, is listed in Item Seven in the Auto Dealer Declarations. Item Seven states:

> Schedule of Covered Autos Which Are Furnished To Someone Other Than A Class I or Class II Operator or Which Are Insured On A Specified Car Basis

> See Schedule of Covered Autos

Appellant points out that the schedule of covered autos "names

only one vehicle," a "1999 International Rollback," and the named vehicle is not the vehicle Pierson was driving at the time of the accident.

{¶10} Thus, appellant claimed that the towing and transporting of autos exclusion precludes coverage for the accident and, consequently, it has no duty to defend or indemnify appellees for losses arising out of the accident. Appellant further argued that its policy contains a blanket exclusion for punitive damages. Thus, appellant requested summary judgment regarding all claims and a declaration that it has no duty to provide coverage for the accident or to defend and indemnify appellees.

{¶11} Appellees filed a combined summary judgment motion in opposition to appellant's motion and argued that the exclusion for the towing and transportation of autos "is irrelevant and inapplicable" because Pierson did not haul "autos" at the time of the accident. Instead, appellees claimed that Pierson carried "scrap metal and crushed vehicles." Appellees also contended that (1) appellant incorrectly interpreted the towing exclusion because appellant's interpretation would render coverage illusory, and (2) the policy is internally inconsistent and this inconsistency creates "some ambiguity."

{¶12} Appellees also disputed appellant's argument that the trailer attached to the semi-truck establishes that the semi-

truck was moving, towing, or hauling an "auto." Appellees contended that a semi-truck with an attached trailer constitutes a single unit and, hence, a single "auto." Appellees claimed that because courts have uniformly held that a tractor-trailer combination is viewed as one vehicle for insurance purposes, they disagreed with appellant's interpretation of the towing exclusion to mean that the semi-truck, an "auto," was towing the 2006 trailer, also an "auto." Appellees further argued:

> [I]t is common sense that a semi-tractor does not move, haul, tow or carry anything (i.e. cargo), unless it has an attached trailer. Rather, the combination tractor/trailer is what does the moving, hauling, towing. * * * * Simply put, what is being moved, towed, hauled and/or carried is the load, goods, or cargo that is on or in the trailer attached to the semi.

Appellees also noted that, because the towing and transporting of autos exclusion uses the plural word "autos," the use of the plural word shows appellant's intent to exclude coverage for vehicles used to tow more than one "auto." Appellees thus alleged that the towing exclusion should not preclude coverage when one "auto," such as a semi-truck, is used to tow a single "auto," such as a trailer. Appellees further opined that appellant's interpretation of the towing and transporting of autos exclusion would render coverage under the policy illusory. If the trailer "constitutes an 'auto' being moved, towed, hauled or carried, then, appellee reasons, there would never be any coverage whenever any semi-truck (other than the 1999

International Rollback semi) owned by Hillsboro * * *is used with an attached trailer to haul any kind of cargo." Appellees thus claimed that "[appellant's] interpretation would eliminate all commercial auto liability coverage except when the 1999 International Rollback semi-truck is used."

{¶13} Consequently, appellees requested the trial court determine that appellant is obligated to defend and indemnify appellees for any claims, and to declare that "[appellant's] policy provides primary liability coverage in the amount of one million dollars for the subject accident."

{¶14} In its summary judgment motion, UFCC also asserted that appellant's policy provides coverage to appellees for the accident and disputed appellant's argument that the towing and transporting of autos exclusion precludes coverage. UFCC claimed the 2006 trailer does not constitute an "auto" because courts across the country have indicated "that a truck-tractor and a trailer become one vehicle when they are connected."

{¶15} UFCC further contended that appellant's interpretation of the towing exclusion contradicted the owned autos coverage for symbol 22 autos. Symbol 22 covers owned autos, as well as "any 'trailers' you don't own while attached to power units you own.'" UFCC thus asserted that the symbol 22 definition treats an owned semi-truck with a non-owned trailer attached to it as a combined unit for covered auto purposes. UFCC alleged that to

read the towing exclusion to mean that coverage is excluded when an owned auto, such as a semi-trailer, is used to tow another owned auto, such as a trailer, would contradict the symbol 22 definition and renders the policy ambiguous.

{¶16} UFCC also argued that the 2006 Transcraft trailer was not hauling "autos," or that the objects the semi-truck-trailer combination carried are not "autos."  UFCC maintained that those objects are not "land motor vehicles" because they are no longer capable of operation on land as motor vehicles.

{¶17} After consideration, the trial court granted appellant summary judgment regarding the punitive damages claims, but denied appellant's request for summary judgment regarding its duty to defend and indemnify appellees for all other claims and damages arising out of the accident.  The court thus entered summary judgment in appellees' and UFCC's favor regarding appellant's duty to defend and indemnify appellees for all claims and damages, except punitive damages.

{¶18} In reaching its decision, the trial court found that appellant's policy "is very convoluted, confusing and written in a way that is not easily understood without rigorous reading and rereading of the policy."  The court also determined that the Schedule of Covered Autos form creates an ambiguity as to which autos are covered.  The court noted that the first sentence on the schedule states that "[t]his endorsement changes the policy

effective on the date of inception unless another date is indicated below." The next sentence reads: "(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)". The court observed that because both the policy and the endorsement contain the same date(April 5, 2018), the two introductory sentences "contradict each other." The court explained:

> [T]he intent of the first sentence appears to list autos added at the inception date, yet sentence two advises the person inserting the information that it is only to be completed if the endorsement is issued subsequent to the inception of the policy. If as [appellant] argues, this endorsement was intended to limit the coverage to the 1999 Freightliner Rollback, the Court finds it to be contradictory and confusing which creates an ambiguity in the policy that must be construed against [appellant].

Consequently, the trial court determined that appellant's policy provides liability coverage and the towing exclusion did not apply so as to preclude coverage. The court agreed that the trailer is an "auto," and that the declarations page indicated that symbol 22 autos, owned autos, are covered under the policy. The court stated that "the policy does cover any autos owned by [appellees] at the time of the collision including the 2006 Tradecraft [sic] trailer and therefore the Item Seven exclusion does not apply." The trial court also did not agree with appellant that the scrap metal loaded onto the trailer fell within the policy's definition of "autos." The court thus

concluded that:

> the 1999 Freightliner and the 2006 Autocraft [sic]
> trailer that were owned by [appellees] at the time of
> the collision were both covered autos under Symbol 22 on
> the Auto Dealers Coverage Form (CA 00 25 10 13) of the
> insurance policy, and the metal on the trailer did not
> consist of autos that would exclude coverage under "Item
> Seven" of the "Auto Dealer-Liability, Garagekeepers and
> Physical Damage Coverage Changes."

Accordingly, the trial court declared that appellant "is obligated * * * to defend and to indemnify [appellees] for all claims and damages excluding punitive damages that may be awarded to [the injured parties]."  This appeal followed.

1.

**{¶19}** In its sole assignment of error, appellant asserts that the trial court incorrectly entered summary judgment in appellees' and UFCC's favor.  Appellant contends the court wrongly construed its policy to require appellant to defend and indemnify appellees for any damages they are obligated to pay as a result of the accident [2] because the towing and transporting of

---

[2] A trial court decision that declares that an insurer has a duty to defend constitutes a final, appealable order. *Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶¶ 24-25, citing *Gen. Acc. Ins. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 540 N.E.2d 266 (1989). Even though in the case sub judice the trial court's decision does not expressly declare that appellant's policy provides primary liability coverage, the trial court granted appellees' summary judgment motion except as to the punitive damages claim.  The appellees' summary judgment motion requested the court to declare that appellant's "policy provides primary liability coverage in the amount of one million dollars for the subject accident."  By granting appellees' summary judgment motion, the trial court necessarily determined

autos exclusion unambiguously precludes coverage for the accident.

**{¶20}** Initially, we emphasize that appellate courts conduct a de novo review of trial court summary judgment decisions. *E.g., State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio- 1329, 128 N.E.3d 209, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court need not defer to the trial court's decision, but instead must independently review the record to determine if summary judgment is appropriate. *Grafton*, 77 Ohio St.3d at 105, 671 N.E.2d 241.

Civ.R. 56(C) provides in relevant part:

> * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the

---

that appellant's policy provides primary liability coverage. *See Lexington Ins. Co. v. DunnWell, LLC*, 2016-Ohio-5311, 69 N.E.3d 1066, ¶ 10 (9th Dist.) (when a decision leads to "the reasonable and logical inference that one party has in fact prevailed, the requirements of finality are satisfied").

party's favor.

**{¶21}** Therefore, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *E.g., State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, 172 N.E.3d 143, ¶ 8; *Pelletier* at ¶ 13; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶22}** Similarly, the interpretation of an insurance contract is also a question of law that appellate courts must independently review without deference to a trial court's decision. *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. "The fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy in its entirety." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d 1224, ¶ 8. Courts must presume that the language used in the contract reflects the parties' intent. *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192, 2016-Ohio-7742, 69 N.E.3d 711, ¶ 18; *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d

216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶23} Thus, courts must first review the plain and ordinary meaning of the language used in a contract "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *accord Galatis* at ¶ 11. If the language is clear and unambiguous, "a court may look no further than the writing itself to find the intent of the parties." *Galatis* at ¶ 11 (citation omitted). "[A] contract is unambiguous if it can be given a definite legal meaning." *Id.* (citation omitted).

{¶24} Generally, a contract is ambiguous if it is reasonably susceptible of more than one interpretation. *Laboy* at ¶ 9. To determine whether a contract is ambiguous, courts must consider the contract "'as a whole,'" and not simply "'detached or isolated parts thereof.'" *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 13, quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172, 436 N.E.2d 1347 (1982). Thus, in order to determine whether an insurance policy provision is ambiguous, a court "must consider the context in which the provision is used." *Id.* at ¶ 14. In other words, courts "must look at the provision in the overall context of the policy in determining whether the provision is ambiguous." *Id.*

at ¶ 25.  "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed."  *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, at ¶ 11, citing *Galatis* at ¶ 11.

**{¶25}** When provisions of an insurance policy are deemed to be ambiguous, "they will be construed strictly against the insurer and liberally in favor of the insured."  *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus; *see also Sauer* at ¶ 11.  Courts will not, however, apply this rule "'so as to provide an unreasonable interpretation of the words of the policy.'"  *Galatis* at ¶ 14, 797 N.E.2d 1256, quoting *Morfoot v. Stake*, 174 Ohio St. 506, 190 N.E.2d 573 (1963), paragraph one of the syllabus.  "[O]nly where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage."  *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88, 1989 WL 122497 (1989), overruled on other grounds by *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d 500, 620 N.E.2d 809 (1993) (citations omitted).  Courts may not invoke "the general rule of liberal construction * * * to create an ambiguity where there is none."  *Id.*

**{¶26}** "[T]he initial determination of whether an ambiguity

exists presents an abstract legal question, which we [the appellate court] review on a de novo basis." *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 2008-Ohio-1286, ¶ 8, citing *Stewart v. Stewart*, 4th Dist. Ross No. 92CA1885, 1992 WL 388546, *2 (Dec. 22, 1992).  "If we determine that an ambiguity exists, we afford the trial court discretion to clarify the ambiguity."  *Cisco v. Cisco*, 4th Dist. Gallia No. 08CA8, 2009-Ohio-884,¶ 13, citing *Pierron* at ¶ 8.

**{¶27}** In the case sub judice, as we explain below, we do not agree with the trial court's determination that appellant's insurance policy is ambiguous.  Instead, we believe a plain reading of the entire policy shows that appellant's policy does not provide coverage to the appellees for the subject accident.

APPELLANT'S INSURANCE POLICY

**{¶28}** The Auto Dealers Coverage Form (CA 00 25 10 13) states that "[v]arious provisions in this policy restrict coverage" and advises the insured to "[r]ead the entire policy carefully to determine rights, duties and what is and is not covered."

**{¶29}** Section I.D. contains the "Covered Autos Liability Coverage" provision and states:

> We will pay all sums an 'insured" legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of the covered 'autos'.

Section I.A indicates that "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of [the insured's] coverages."  Item Two of the Declarations states that "covered autos liability" coverage extends to autos bearing the numerical designations "22, 27, 29, 32."

{¶30} As relevant in the case at bar, the policy defines autos denominated with symbol 22 as "[o]nly those 'autos you own (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to power units you own).  This includes those 'autos' you acquire ownership of after the policy begins." The policy defines autos denominated as symbol 27 as "[o]nly those 'autos' described in Item Seven of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailer' you don't own while attached to a power unit described in Item Seven)."  Section V.D. defines "auto" to mean "a land motor vehicle, 'trailer' or semitrailer."  Section V.X. states that "[t]railer includes semitrailer."

{¶31} A plain reading of the above coverage provisions shows that the semi-trailer and the attached trailer are "covered autos" for purposes of "covered autos liability coverage."  The next question, however, is whether an exclusion applies. Although appellant asserts that the policy's towing and transporting of autos exclusion precludes coverage for the

accident, appellees and UFCC claim that (1) the towing and transporting of autos exclusion does not apply, (2) appellant's policy is inconsistent and ambiguous, and (3) to accept appellant's interpretation of the policy would create absurdity and render coverage illusory.

### TOWING AND TRANSPORTING OF AUTOS EXCLUSION

{¶32} Appellant asserts that the policy's exclusion unambiguously precludes coverage when an auto, not specifically identified in Item Seven of the Declarations, is used to tow, move, haul, or carry autos.  Appellant suggests that Item Seven refers to the Schedule of Covered Autos and lists one vehicle, a 1999 Freightliner Rollback truck.  Appellant thus asserts that the towing exclusion precludes coverage when any vehicle other than the 1999 Freightliner Rollback is used to tow, move, haul, or carry other autos.

{¶33} Appellant points out that, at the time of the accident, Pierson used an auto not identified in Item Seven (i.e., not listed on the Schedule of Covered Autos) to tow, move, haul, or carry autos.  Appellant thus contends that, because the semi-truck (an "auto") was towing, moving, hauling, or carrying another "auto" (the 2006 Transcraft trailer), the towing exclusion unambiguously precludes coverage for the accident because the accident arose out of the use of an auto

not identified in Item Seven used to tow, move, haul, or carry other autos.

{¶34} Appellees, on the other hand, contend that "for [the] exclusion to apply, the insured must be using (1) an 'auto' not identified in Item 7 in the Auto Dealer Declarations (i.e. the 1999 International Rollback), (2) to move, tow, haul or carry 'autos.'"  Although appellees agree that Pierson did not use the 1999 International Rollback on the date of the accident, they do not agree that Pierson was moving, towing, hauling, or carrying "autos."  Instead, appellees submit that Pierson "was hauling scrap metal and crushed vehicles at the time of the collision."  Thus, appellees reason, because Pierson did not haul "autos" at the time of the collision, the towing and transporting of autos exclusion does not apply.

{¶35} Appellees also disagree with appellant that the semi-truck towed an "auto," the 2006 Transcraft trailer.  Appellees instead contend that "courts throughout the country have recognized that a connected tractor-trailer are regarded as the equivalent of an inseparable unit," and the towing exclusion uses the plural word "autos" to indicate that the towing vehicle must be towing more than one "auto" and appellees thus contend that, even if the semi-truck had been towing the trailer, it was only towing one "auto" and the towing exclusion should not apply when only one "auto" (such as a trailer) is being towed.

{¶36} UFCC likewise asserts that the towing exclusion should not apply.  Although neither the semi-truck nor the trailer involved in the accident is listed in Item Seven,  UFCC argues that neither vehicle "was being used to move, tow, haul, or carry 'autos'" at the time of the accident.  Like appellees, UFCC claims that courts have determined that "a truck-tractor and a trailer become one vehicle when they are connected."  UFCC thus contends that the semi-truck did not tow the trailer, but rather, the semi-truck-trailer combinations is one inseparable unit.  UFCC further disputes appellant's argument that the trailer hauled "autos" at the time of the accident because crushed vehicles are not "autos."

## SCOPE OF EXCLUSION

{¶37} The "towing and transporting of autos" exclusion appears in an endorsement to the insurance policy.  The top of the endorsement reads, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."  The endorsement then indicates it "modifies insurance provided under the * * * AUTO DEALERS COVERAGE FORM."  Section H. states that "[t]he following exclusions are added to" Section I.D.4. of the covered autos coverages and to Section II of the exclusions listed under the "General Liability Coverages."

{¶38} The endorsement states that "[t]his insurance does not

apply to any of the following:"

**Towing and Transporting of Autos**

"Bodily injury" or "property damage" arising out of the ownership, operations, maintenance or use of any "auto" that is not identified in ITEM SEVEN in the Auto Dealer Declarations used to move, tow, haul or carry "autos."

ITEM SEVEN provides:

Schedule Of Covered Autos Which Are Furnished To Someone Other Than A Class I or Class II Operator Or Which Are Insured On A Specified Car Basis

See Schedule of Covered Autos

The "Schedule of Covered Autos" begins with an explanation that reads:

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:
(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

The Schedule indicates that it is effective April 5, 2018 and lists one vehicle, a "1999 International Rollback."

{¶39} After our review, we believe that the plain language of the policy, and the context of the towing and transporting of autos exclusion, shows that the exclusion precludes coverage if an auto, other than an auto listed in Item Seven (which, in turn, references the Schedule of Covered Autos), is used to tow, move, haul, or carry other autos. While we generally agree with the trial court's view of the complexity and difficulty in deciphering insurance contract language, in the case sub judice

we find no ambiguity concerning this exclusion.  Instead, this provision plainly references other parts of the policy (Item Seven and the Schedule of Covered Autos) to further define the exclusion. It is important to recognize that an insurance exclusion does not become ambiguous simply because it cross-references other forms or endorsements that comprise the policy. *See generally* 2 Couch on Ins. Section 18:19 (3d Ed. 2021 Update) ("When properly incorporated into the policy, the policy and the rider or endorsement together constitute the contract of insurance and are to be read together to determine the contract actually intended by the parties.").

{¶40} In the case sub judice, we further believe that the Schedule of Covered Autos form language, that the trial court reviewed in isolation and concluded creates a contradiction, does not require a conclusion that the towing and transporting of autos exclusion is ambiguous.  That language is introductory and, even if it appears to be contradictory, it does not negate the obvious identification of one specific auto on the Schedule of Covered Autos.  Moreover, the second page of the entire set of documents that consists of the policy, forms, and endorsements lists the "forms and endorsements [that] are made part of the policy at time of issue [sic] and are effective on the inception date of the policy."  Included in the list is the "Schedule of Covered Autos."  Including the "Schedule of Covered

Autos" in the listing of forms and endorsements evidences a clear intent to make the Schedule of Covered Autos part of the policy on the inception date of the policy. We further note that neither appellees nor UFCC seriously dispute that the towing exclusion's reference to Item Seven, and Item Seven's reference to the Schedule of Covered Autos, renders the policy ambiguous.

{¶41} Therefore, after our review of the policy language, we believe that the entirety of the policy, and the context of the towing and transporting of autos exclusion, show that this exclusion is plain and unambiguous. *See generally Liberty Mut. Ins. Co. v. Sims*, Tx.Ct.App. No. 12-14-00123-CV, 2015 WL 7770166, *4 (Dec. 3, 2015) (reviewing insurance policy in entirety, including endorsements and listing of forms, to conclude policy not ambiguous). This exclusion applies if an auto, not identified in Item Seven, is used to tow, move, haul, or carry autos. Item Seven references the Schedule of Covered Autos. The Schedule of Covered Autos lists one vehicle--a 1999 Freightliner Rollback. Thus, the exclusion applies if an auto, other than the 1999 Freightliner Rollback, is used to tow, move, haul, or carry autos.

{¶42} After having clarified the scope of the towing and transporting of autos exclusion, we now review whether the

undisputed facts in the case at bar show that the exclusion should apply so as to preclude coverage under appellant's policy for the subject accident.

APPLICABILITY OF EXCLUSION

{¶43} Appellant asserts that, at the time of the accident, Pierson used an auto not identified in Item Seven (the semi-truck) to tow, move, haul, or carry another auto (the trailer). Appellant thus asserts that the towing exclusion should apply to preclude coverage.

{¶44} However, appellees and UFCC argue that this exclusion should not apply because the semi-truck cannot be considered to have been towing another "auto," i.e., the trailer. They assert that case law has recognized that a semi-truck and attached trailer are functionally one vehicle for purposes of determining insurance coverage.

{¶45} We first observe that the case authority that appellees and UFCC cite do not involve towing-transporting-autos exclusions, but instead include situations when separate insurance policies cover a semi-truck and an attached trailer and a court must determine which insurance policy provides coverage for an accident. *E.g., Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 165-66 (3d Cir.1987) (emphasis added) (when "an accident arises out of the use of a combined

vehicle such as a tractor-trailer *and where separate policies cover the tractor and the trailer*, all insurance applicable to the combined vehicle comes into play, regardless of which part of the rig was physically involved in the accident"); *Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726-27 (5th Cir.1978) (emphasis added) ("The question of *which policy provides primary coverage for the liability* thus boils down to whether the accident arose out of the use of the tractor, the trailer, or both."). When separate insurance policies cover a semi-truck and an attached trailer, the law regards the two units as a combined unit so as to require both insurance policies to provide coverage for an accident that arises out of the use of the combined semi-truck and attached trailer. *Blue Bird* at 727, quoting Risjord & Austin, 7 Automobile Liability Insurance Cases 9540 ("'Where a truck and towed trailer are involved in an accident, the courts are well-advised to avoid the metaphysics and hold that the accident arose out of the use of each.'").

{¶46} The case at bar, however, does not involve a situation in which separate insurance policies cover the semi-truck and the trailer. Instead, no serious dispute exists that appellant's policy defines both vehicles as covered autos for purposes of Covered Autos Liability Coverage. The question thus is not which of two separate policies should apply to the

subject accident, but instead whether appellant's towing and transporting of autos exclusion applies to preclude coverage. The case authority that appellees and UFCC cite state nothing about a towing-transporting-autos exclusion like the language in the case at bar. Thus, we believe those cases are not applicable to the towing-transporting-autos exclusion involved in the case sub judice.

**{¶47}** Furthermore, we point out that a well-regarded insurance treatise explicitly recognizes the validity of towing-transporting-autos exclusions:

> A towing-trailer exclusion is valid, and the insurer is, therefore, not liable where the policy contains an exclusion from coverage for liability while the automobile is "used for towing or propelling trailers or other vehicles used as trailers," and such a trailer was attached to the insured's car at the time of the accident. So, a provision in a policy insuring a truck that it should not be used for towing a trailer and expressly stipulating that the policy did not cover the truck while being so used precludes recovery for injuries caused by being struck by the insured truck while towing a trailer. There is general recognition that the exclusion's validity stems from the fact that there is an increased risk created by the use of the vehicle in towing operation.

8A Couch on Ins. Section 121:51 (footnotes omitted); *accord Waddey v. Maryland Cas. Co.*, 171 Tenn. 112, 100 S.W.2d 984, 986, 7 Beeler 112, 109 A.L.R. 654 (1937) ("Where a policy of automobile liability insurance expressly excepts accidents occurring while the machine is used for towing a trailer, it has been held that the insurer is not liable for an accident

occurring when the insured has a trailer attached to his car, without reference to whether the towing of the trailer was causally connected with the accident.") The treatise also explains the effect of attaching a trailer to another auto in the context of a towing exclusion:

> The manner of attaching the trailer to the automobile cannot alter the fact that the attached trailer is only a trailer, and conversely, it will not be regarded as part of the automobile, rather than a trailer, regardless of the manner in which it is connected to the automobile. To illustrate, the fact that a semitrailer is attached to an insured automobile by an iron bar does not make the trailer part of the insured automobile so as to preclude the operation of the towing-trailer exclusion.

8A Couch on Ins. Section 121:59 (footnotes omitted).

{¶48} Consequently, in the case at bar we disagree with the appellees' and UFCC's assertions that the truck could not have been moving, towing, hauling, or carrying an "auto," i.e., the trailer. Instead, we believe that the case authority they cite is inapplicable to the facts here. As Couch on Insurance indicates, an insurance policy may exclude coverage for autos that are used to move, tow, haul, or carry other autos, including trailers.

{¶49} Although none of the parties provided a definition of the word "tow," the following definition appears in a 1939 case: "The word 'towing' signifies movement. As defined in Webster's New International Dictionary: 'to tow' means 'to pull', 'to

drag', 'to draw', 'to pull about', 'to drag or take along with one'." *Maryland Cas. Co. v. Aguayo*, 29 F.Supp. 561, 564 (S.D.Cal.1939). A modern dictionary likewise defines the word "tow" to mean "to draw or pull along behind." https://www.merriam-webster.com/dictionary/tow.

**{¶50}** In the case sub judice, the operator used a truck to draw or pull along behind the 2006 Transcraft trailer. We agree with appellant that, under the plain language of the policy, the truck (an auto) was used to tow, move, haul, or carry another auto, the 2006 Transcraft trailer. Moreover, we do not agree with appellees that use of the plural word "autos" in the towing exclusion shows that the exclusion does not apply unless the towing vehicle is towing more than one vehicle. Instead, as in cases of statutory construction, courts that construe contracts should read the singular and plural forms of words "'"interchangeably so long as such a construction is consistent with the evident purposes of the contract."'" *Garlock v. Silver Dollar Camp*, 3rd Dist. No. 5-20-35, 2021-Ohio-1690, 173 N.E.3d 88, ¶ 14, quoting *Grange Life Ins. Co. v. Bics*, 9th Dist. Lorain No. 01CA007807, 2001 WL 1044081, *3 (Sept. 12, 2001), quoting *Ohio Development Co. v. Ellis*, 2d Dist. Montgomery No. CA 10340, 1987 WL 18831, *5 (Oct. 22, 1987); *accord* R.C. 1.43 ("[t]he singular includes the plural, and the plural includes the singular").

{¶51} For example, in *Bertelstein v. Marks*, 25 Ohio Law Abs. 117, 120 (2nd Dist.1937), the court determined that an automobile liability insurance policy that excluded liability when the automobile was used to carry "passengers for a consideration" applied even though the subject accident involved only a single passenger.  In reaching its decision, the court quoted another case that construed the same language, *Lumbermen's Mutual Casualty Co. v. Wilcox*, 16 Fed. Supp. 799 (1936).  In *Lumbermen's*, the court explained:

> The contention is made that the word "passengers" is used and that in the instant case there was but a single passenger.  The rule of construction is that singular number includes plural number in the interpretation of contracts, and a contrary construction is only necessary when the plain intent of the contract shows the contrary construction necessary to give effect to the intention of the contracting parties.

*Id.* at 800 (citations omitted). Thus, based largely upon the *Lumbermen's* court's statement, the *Bertelstein* court likewise determined that the plural word "passengers" also included the singular form of the word, "passenger."

{¶52} Similarly, in the case sub judice we apply the general rule of contract construction that the plural word "autos" includes the singular word "auto," unless the insurance policy plainly indicates that only the plural form applies.  Here, we do not find anything in the contract's plain language to suggest that the term "autos" does not also include the singular form of

the word, "auto." Consequently, we disagree with appellees that the towing exclusion applies only when the towing vehicle is towing more than one auto.

**{¶53}** Appellees and UFCC next contend that the towing exclusion should not apply because the crushed vehicles loaded onto the trailer are not "autos." They therefore assert that, even if the truck (an auto) was towing an auto (the trailer), the towed auto was not towing "autos." We, however, believe that this particular issue is moot. The exclusion applies when an auto, not identified in Item Seven, is used to tow, move, haul, or carry autos. As we have previously determined, the truck (an auto) is not identified in Item Seven, and that truck was used to tow, move, haul, or carry autos (the 2006 Transcraft trailer). "Under a trailer exclusion in an automobile policy, the insurer is exempt from liability whether or not the attached trailer actually caused or contributed to the accident." 11 Couch on Insurance, Section 156:88; *see Waddey v. Maryland Cas. Co.*, 171 Tenn. 112, 100 S.W.2d 984 (1937), quoting Berry on Automobiles, vol. 6, p. 776 ("'Where a policy of automobile liability insurance expressly excepts accidents occurring while the machine is used for towing a trailer, it has been held that the insurer is not liable for an accident occurring when the insured has a trailer attached to his car, without reference to whether the towing of the trailer was causally connected with

the accident.'"); *Coolidge v. Std. Acc. Ins. Co.*, 114 Cal.App. 716, 722, 300 P. 885 (Cal.App.1931) (towing exclusion applied when automobile towing trailer loaded with sheep and noted that "[t]he express terms of the policy exempted the insurance company from liability when the insured automobile was used to propel or tow a trailer. ").

**{¶54}** Thus, even if one could argue that the 2006 Transcraft trailer caused or contributed to the accident, the towing exclusion means that appellant is exempt from liability. Accordingly, in the case sub judice the question of whether the 2006 Transcraft trailer carried "autos" does not affect the outcome of our decision.

## INCONSISTENCY AND AMBIGUITY

**{¶55}** Appellees and UFCC also contend that the insurance policy is inconsistent and contradictory and, as a result, the policy must be deemed to be ambiguous and should be construed to require appellant to defend and indemnify appellees.

**{¶56}** Appellees' inconsistency argument begins with their agreement that the truck Pierson drove, the 1999 Freightliner truck, is not identified in Item Seven. They assert, however, that the "policy expressly provides auto liability coverage for all vehicles" that the insured owns. Appellees point out that because the commercial auto liability coverage extends to symbol

22 "(owned autos)" and symbol 27 "(specifically described autos)," providing coverage for symbol 22 and symbol 27 autos "makes the Policy coverages internally inconsistent and unnecessarily creates some ambiguity."  Appellees do not further elaborate upon this argument, however.

{¶57} UFCC also argues that the policy is inconsistent and contradictory.  In particular, UFCC asserts that appellant's interpretation of the towing exclusion means that the truck towing the trailer contradicts the policy's symbol 22 definition of covered autos because the policy defines symbol 22 covered autos to mean owned autos and "any 'trailers' you don't own while attached to power units you own."  UFCC contends that this definition shows that the policy treats a combined tractor-trailer as one auto for symbol 22 coverage, but does not similarly treat them as one unit for purposes of the towing exclusion.  UFCC thus claims that the inconsistency means that the towing exclusion is ambiguous and must be strictly construed against appellant.

{¶58} Initially, we observe that in the insurance policy context, if any inconsistency appears between the terms of the original insurance policy and an endorsement to that policy, "the endorsement terms control."  *Baker v. Aetna Cas. & Sur. Co.*, 107 Ohio App.3d 835, 843, 669 N.E.2d 553 (10th Dist.1995), citing *Workman v. Republic Mut. Ins. Co.*, 144 Ohio St. 37, 46,

56 N.E.2d 190 (1944), overruled in part by *Brewer v. De Cant*, 167 Ohio St. 411, 149 N.E.2d 166 (1958) ("the endorsement must be regarded as a modification of the terms of the original contract of insurance if a clear inconsistency appears"). Indeed, courts have recognized that "endorsements by their very nature are designed to trump general policy provisions." *Nationwide Mut. Ins. Co. v. Schmidt*, 307 F.Supp.2d 674, 677 (W.D.Pa.2004). Consequently, when "a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails." *Id.; accord Besic v. Citizens Ins. Co. of the Midwest*, 290 Mich.App. 19, 26, 800 N.W.2d 93, quoting 4 Holmes, Appleman on Insurance (2d ed), Section 20.1, p 156 ("[E]ndorsements often are issued to specifically grant certain coverage or remove the effect of particular exclusions.").

**{¶59}** In the case sub judice, to the extent the towing exclusion, which is included in an endorsement, may be inconsistent with, or contradicts, the provisions in the main policy's "Covered Autos Liability Coverage," the endorsement prevails. We therefore reject appellees' and UFCC's claim that an ambiguity exists because the towing exclusion contained in an endorsement to the policy conflicts with the general policy provisions.

ILLUSORY COVERAGE

{¶60} Appellees and UFCC argue that to interpret the towing and transporting of autos exclusion as appellant suggests would render insurance coverage under the policy illusory and lead to absurd results. Appellees assert that appellant's interpretation of the towing exclusion "would eliminate all commercial auto liability coverage except when the 1999 International Rollback semi-truck is used."  Appellees further assert that appellant's policy interpretation will lead to absurd results, but do not further expound upon this argument.

UFCC similarly contends that appellant's interpretation of the policy "would render certain provisions illusory and lead to absurd results."  UFCC asserts that appellant's interpretation of the policy means that "the 1999 Freightliner semi-truck and the 2006 Transcraft trailer would have been covered if they hadn't been carrying 'autos' at the time of the accident."  UFCC claims that appellant's "reasoning is flawed," and to apply appellant's interpretation means that owned auto coverage under symbol 22 "would become indistinguishable from the coverage offered under symbol 27," i.e., "[o]nly those 'autos' described in Item Seven of the Declarations."  UFCC argues that to construe the policy as appellant suggests means that "symbol 22 would appear to grant a benefit to the insured while actually granting none, rendering it illusory."  UFCC further asserts that to interpret the policy as appellant suggests "would only

provide coverage if the insureds were 'bobtailing' (i.e., driving a tractor without a trailer)." UFCC thus claims that, because appellant's interpretation would "only allow coverage in the narrowest of circumstances, while potentially leading to numerous uninsured semi-truck on the road," appellant's interpretation would be absurd.

**{¶61}** In general, an insurance contract is not illusory unless it fails to confer "some benefit to the insured." *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 24; *accord H.P. Mfg. Co., Inc. v. Westfield Ins. Co.*, 2018-Ohio-2849, 117 N.E.3d 146, ¶ 33 (8th Dist.). In the case sub judice, we do not agree that to interpret the towing exclusion to preclude coverage renders the policy illusory. Instead, the policy confers some benefit to the insured because the policy provides coverage to covered autos, which includes all autos that appellees own. The record does not contain evidence regarding all of the autos that appellees own that could be considered covered autos under the policy. Instead, the record only indicates that appellees own the truck and trailer involved in the accident, along with another truck not involved in the accident. All three vehicles are covered autos under appellant's policy. However, simply because the towing and transporting of autos exclusion may limit the circumstances under which these covered autos may be entitled to

insurance coverage does not render the coverage illusory.  The truck would not be subject to the towing and transporting of autos exclusion if it were not, in fact, towing, moving, hauling, or carrying autos.  Alternatively, it would not be subject to the exclusion if it were identified in Item Seven. Moreover, even if the truck's coverage would be limited to "bobtailing," as UFCC indicates, UFCC has not cited any case authority to indicate that insurance policies limited to bobtail coverage are illusory.[3]

**{¶62}** The trailer likewise is a covered auto under the policy.  The trailer would not be subject to the towing and transporting of autos exclusion if an auto identified in Item Seven of the policy were towing, moving, hauling, or carrying the trailer.  Again, simply because the policy limits coverage

---

[3] One court has explained "bobtail insurance" as follows:

"Bob-tail" in trucking parlance is the operation of a tractor without an attached trailer," and "bobtail insurance" typically refers to insurance for when a tractor is not being used in the business of an authorized carrier. *Prestige Casualty Co. v. Michigan Mutual Insurance Co.*, 99 F.3d 1340 (6th Cir. 1996); *Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 932 (7th Cir. 2011) (defining "bobtail insurance" as coverage for "truck drivers while they are ... driving their cabs without trailers outside the service of the federally licensed carriers under whose authority they operate.").

*Lopez v. W. Surplus Lines Agency, Inc.*, D.N.M. No. 1:19-cv-00349-JCH-LF, 2021 WL 4478023, *2 (Sept. 30, 2021).

does not mean the insurance policy is illusory.

{¶63} For similar reasons, we do not believe that to interpret the towing and transporting of autos exclusion will lead to absurd results. Appellees maintain covered autos liability for covered autos that are not identified in Items Seven when those covered autos are not used to tow, move, haul, or carry other autos. Simply because appellees may not have realized at the time the policy was issued that it precluded coverage when any auto other than the 1999 Rollback truck was used to move, tow, haul, or carry other autos does not (1) make the insurance policy is ambiguous, (2) make coverage illusory, or (3) lead to absurd results.[4]

CONCLUSION

Therefore, based upon the foregoing reasons, we believe that the trial court incorrectly entered summary judgment in appellees' and UFCC's favor regarding appellant's duty to defend and indemnify appellees for any claims and damages, except punitive damages, arising out of the accident. Accordingly, we sustain appellant's sole assignment of error and reverse the trial court's judgment that declared appellant has a duty to defend and indemnify appellees for any claims and damages, excluding punitive damages, arising out of the accident.

---

[4] The two vehicles involved in the subject accident are listed on the declarations page of UFCC's policy.

JUDGMENT REVERSED AND CAUSE
REMANDED CONSISTENT WITH THIS
OPINION.

JUDGMENT ENTRY

It is ordered that the judgment entry be reversed and this cause be remanded for further any proceedings deemed necessary to carry this judgment into execution. Appellant shall recover of appellees the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.