[Cite as *Spitzer Autoworld Akron, L.L.C. v. Fred Martin Motor Co.*, 2024-Ohio-3394.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SPITZER AUTOWORLD AKRON, LLC

    Appellee/Cross-Appellant

v.

FRED MARTIN MOTOR COMPANY

    Appellant/Cross-Appellee

C.A. Nos.      30624
               30643

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV-2020-09-2564

DECISION AND JOURNAL ENTRY

Dated: September 4, 2024

FLAGG LANZINGER, Judge.

{¶1} In Case No. 30624, Fred Martin Motor Company ("Fred Martin") appeals from the judgments of the Summit County Court of Common Pleas. In Case No. 30643, Spitzer Autoworld Akron, LLC ("Spitzer") cross-appeals. Because the appeals arise out of the same trial court matter, this Court consolidated the parties' appeals for purposes of the record, oral argument, and decision. For the following reasons, this Court affirms.

I.

{¶2} Spitzer and Fred Martin are both licensed to sell and service motor vehicles in the State of Ohio. In 2020, Spitzer sued Fred Martin (in a refiled case), asserting claims for: (1) an injunction; (2) damages for breach of contract; and (3) declaratory judgment. Fred Martin counter-claimed against Spitzer for declaratory judgment.

{¶3} In short, the parties' dispute arose when Fred Martin filed an administrative protest with the Ohio Motor Vehicle Dealers Board (the "Dealers Board") to prevent Spitzer from

"establishing" a Chrysler/Jeep/Dodge dealership within ten miles of Fred Martin's Chrysler/Jeep/Dodge dealership. That event, along with Chrysler's bankruptcy in 2009 that predated Fred Martin's protest, gave rise to years of litigation in both federal and state court. This Court will limit its recitation of the facts to those that are relevant to the disposition of this appeal.

### Fred Martin and Spitzer's Agreement

{¶4} In the early 2000s, DaimlerChrysler Motor Company ("Old Chrysler"), developed a nationwide plan to consolidate its lines of vehicles (i.e., Chrysler, Jeep, Dodge, and now Ram) for sale under localized dealerships. In other words, instead of franchisees operating separate Chrysler, Jeep, and Dodge dealerships, the franchisees would operate combined Chrysler/Jeep/Dodge dealerships.

{¶5} To accomplish Old Chrysler's consolidation plan, Spitzer agreed to construct and operate a new, consolidated Chrysler/Jeep/Dodge dealership off Arlington Road in Green, Ohio. While that dealership was being constructed, Spitzer agreed to temporarily relocate its Chrysler/Jeep dealership on East Market Street in Akron to its Dodge dealership on Vernon Odom Boulevard, also in Akron, "for a period not to exceed eighteen months[.]" Fred Martin, on the other hand, agreed to relocate its Dodge dealership in Hartville, Ohio to its Chrysler/Jeep dealership in Norton, Ohio.

{¶6} Ohio law, however, allows dealerships to file an administrative "protest" with the Dealers Board when a competing dealership seeks to relocate or establish a new dealership (selling new cars) within ten miles of its dealership. R.C. 4517.01(C)(C) and R.C. 4517.50(A). If a protest is filed, then the franchisor is precluded from establishing or relocating a dealership until the Dealers Board holds a hearing on the protest. R.C. 4517.50(B).

{¶7} Here, Spitzer's temporary relocation of its Chrysler/Jeep dealership to Vernon Odom Boulevard would put Spitzer's consolidated Chrysler/Jeep/Dodge dealership within ten miles of Fred Martin's consolidated Chrysler/Jeep/Dodge dealership in Norton. Thus, in order to accomplish Old Chrysler's consolidation plan, Spitzer and Fred Martin agreed to "irrevocably waive, relinquish, and surrender forever . . . [a]ny and all right to protest the proposed relocation[s] as provided under . . . [R.C.] 4517.50[.]" The parties memorialized their agreement in a two-page (plus a signature page) written contract executed on May 17, 2007 (the "Agreement"). Old Chrysler was not a party to the Agreement, but the Agreement specifically indicated that the proposed relocations were subject to Old Chrysler's approval.

{¶8} After the parties executed the Agreement, Spitzer relocated its Chrysler/Jeep dealership to Vernon Odom Boulevard, and Fred Martin relocated its Dodge dealership to Norton. Per the Agreement, neither party protested the relocation of the other party's dealership. As part of the Agreement, Spitzer paid Fred Martin $200,000.

{¶9} The record reflects that Spitzer relocated its Chrysler/Jeep franchise to Vernon Odom Boulevard in January 2008, and that Spitzer sold its first vehicle from its consolidated Chrysler/Jeep/Dodge dealership in or around February 2008. The record also reflects that Spitzer held a ground-breaking ceremony at the Arlington Road location in January 2008. Aside from moving dirt and receiving certain supplies, Spitzer made no real progress at the Arlington Road location during the relevant timeframe.

### Old Chrysler's Bankruptcy

{¶10} Unforeseen by the parties, Old Chrysler filed for Chapter 11 bankruptcy on April 30, 2009, and eventually sold nearly all of its assets to "an entirely new corporate entity": "New Chrysler[.]" *Chrysler Group LLC v. Fox Hills Motor Sales, Inc.*, 776 F.3d 411, 415 (6th Cir.

2015). During the course of the bankruptcy proceedings, Old Chrysler terminated 789 franchise agreements, including Spitzer's franchise agreement. As a result, Spitzer could not sell new Chrysler/Jeep/Dodge vehicles effective June 9, 2009. However, Spitzer could continue to sell used vehicles.

**Arbitration Proceedings**

{¶11} In December 2009, Congress enacted Section 747 of the Consolidated Appropriations Act of 2010, which created an arbitration procedure for disenfranchised dealerships to seek "reinstatement" of their terminated Chrysler franchise agreements. *Fox Hills Motor Sales, Inc.* at 415, citing Section 747 of the Consolidated Appropriations Act (2010). Spitzer engaged in arbitration and prevailed.

{¶12} The arbitrator issued its decision in June 2010, which ordered that Spitzer be "reinstated as a new dealership." In doing so, the arbitrator acknowledged Old Chrysler's consolidation plan and "reinstated [Spitzer] at its present dealership [i.e., on Vernon Odom Boulevard]" until no later than December 31, 2011, to allow Spitzer time to complete construction at the Arlington Road location.

{¶13} Subsequent federal litigation confirmed that the sole remedy under Section 747 for disenfranchised dealers that prevailed in arbitration was not an "unconditional 'reinstatement,'" but a "customary and usual letter of intent" from New Chrysler. *Fox Hills Motor Sales, Inc.* at 422-423. "A letter of intent is a binding contract to enter into a sales and service agreement, that is, a contract to be added to the dealer network, or 'reinstated.'" *Id.* The federal litigation clarified that relief under Section 747 is prospective, meaning it did not nullify the bankruptcy court's prior orders that terminated certain franchise agreements. *Id.* at 431.

**New Chrysler's Letter of Intent**

{¶14} Per the arbitrator's decision, New Chrysler issued a letter of intent to Spitzer on October 1, 2010. The letter of intent provided, in part:

> [New Chrysler] is issuing this Letter of Intent . . . to enter into Dodge, Chrysler and Jeep Term Agreements . . . in its customary form, with Spitzer . . . at 1575 V. Odom Boulevard, Akron, Ohio 44302, and ultimately Dodge, Chrysler and Jeep Sales and Service Agreements . . . in its then customary format for a location within one mile of the Arlington Road Exit on Interstate 77 in the City of Green, Ohio . . . .

The letter of intent then set forth the construction requirements for the Arlington Road location, and included a deadline of December 31, 2011, for Spitzer to complete construction and obtain a certificate of occupancy. The letter of intent provided that, regardless of whether Spitzer completed construction at the Arlington Road location, "the term Agreement with respect to V. Odom Boulevard shall terminate on December 31, 2011 . . . ."

**The Protests**

{¶15} On November 22, 2010, New Chrysler notified Fred Martin that it intended to "approve the establishment of the Chrysler, Jeep and Dodge vehicle lines at 1535 Vernon Odom Boulevard Akron, OH 44320." The one-sentence notice to Fred Martin did not indicate that this would be a temporary establishment, nor did it mention the Arlington Road location.

{¶16} In response to New Chrysler's letter of intent, Fred Martin submitted a protest with the Dealers Board to "challenge or prevent the establishment of the Chrysler, Jeep Dodge vehicle line at 1535 Vernon Odom Blvd., Akron, OH 44320 . . . ." Fred Martin's protest stated that "[t]he grounds for this appeal are that Chrysler does not have good cause for the proposed relocation." Another dealership, Falls Motor City, Inc. ("Falls"), located in Cuyahoga Falls, also filed a protest with the Dealers Board. In doing so, Falls cited New Chrysler's intent to "reinstate" Spitzer at the Vernon Odom location. The Dealers Board consolidated the protests.

**State & Federal Litigation**

**{¶17}** The above events gave rise to years of litigation in state and federal court. In March 2011, Spitzer sued Fred Martin, alleging that Fred Martin breached the Agreement by "protesting the reinstatement of Spitzer." In July 2011, the parties filed a joint motion to stay the proceedings pending the outcome of federal litigation addressing Section 747. The trial court reactivated the case in 2015, but the parties filed a stipulated notice of dismissal without prejudice in 2016.

**{¶18}** Spitzer refiled its complaint against Fred Martin in 2017. Fred Martin counterclaimed, alleging that Spitzer breached the Agreement by operating at the Vernon Odom location after November 17, 2008. Specifically, Fred Martin alleged that Spitzer breached the Agreement by operating at the Vernon Odom location for more than "a period not to exceed eighteen months" under the Agreement. That case eventually proceeded toward trial, but the parties voluntarily dismissed the case without prejudice in September 2019.

**The Stay Agreement**

**{¶19}** While some of the above litigation was ongoing, Fred Martin, Spitzer, and Falls filed a "Joint Motion of all Parties to Stay Protest Proceedings" with the Dealers Board in June 2011. The motion included an executed "Agreement to Stay Certain Legal Proceedings and to Extend Spitzer['s] . . . Construction Deadline" (the "Stay Agreement"). In it, the parties agreed to stay the consolidated protest proceedings related to the "establishment" of a Spitzer dealership on Vernon Odom Boulevard pending the outcome of federal litigation concerning Section 747. In its recitals, the Stay Agreement summarized the arbitrator's decision as follows:

> [The arbitrator's decision] allowed Spitzer to be added to Chrysler Group's dealer network. In addition to allowing Spitzer to be added to Chrysler's Group's network at 1535 Vernon Odom Blvd. . . . , Spitzer was allowed to remain a dealer in the Chrysler Group network only if Spitzer completed construction and transitioned its dealership to a new facility on Arlington Road in Green, Ohio, by December 31, 201[1].

**{¶20}** In the Stay Agreement, the parties agreed to extend Spitzer's construction deadline to 300 days following the conclusion of the federal litigation and the consolidated protests. The parties also agreed that, if Fred Martin or Falls' protests were successful, then Spitzer could not establish a dealership on Vernon Odom Boulevard or on Arlington Road.

**{¶21}** The federal litigation resolved in 2018. Spitzer, however, closed its dealership on Vernon Odom Boulevard (which was selling used cars) and sold the property in 2015. According to Fred Martin, Spitzer did not notify anyone, including the Dealers Board, that it sold the property on Vernon Odom Boulevard.

### Spitzer's 2020 Re-Filed Lawsuit Against Fred Martin

**{¶22}** Spitzer refiled its complaint against Fred Martin in 2020, which it later amended. In its amended complaint, Spitzer asserted claims for: (1) a permanent injunction to require Fred Martin "to withdraw its current protest and any future protest to Spitzer's move to Arlington Road"; (2) damages for breach of contract based upon Fred Martin's filing of the protest, which "block[ed]" Spitzer from opening a dealership on Arlington Road; and (3) a declaratory judgment "determining that . . . Fred Martin has contractually relinquished its statutory right to protest the move of Spitzer . . . to within 10 miles of its dealership."

**{¶23}** Fred Martin counterclaimed against Spitzer for declaratory judgment. Specifically, Fred Martin sought a declaration that the Agreement did not apply to its protest of Spitzer's establishment of a dealership on Vernon Odom Boulevard or to a future protest within a geographical area that Fred Martin would otherwise be entitled to protest under R.C. 4517.50. Fred Martin referred to the latter as a "Hypothetical Protest[.]"

**{¶24}** Fred Martin later moved to dismiss Spitzer's amended complaint. Fred Martin argued, in part, that a justiciable controversy did not exist relative to Spitzer's requests for an

injunction and declaratory judgment because Spitzer sold its property on Vernon Odom Boulevard in January 2015, rendering Fred Martin's protest moot. In support of its argument, Fred Martin noted that New Chrysler had requested the Dealers Board to dismiss the consolidated protest as moot in light of the sale. That request remained pending at the time Fred Martin filed its motion to dismiss.

**{¶25}** In its request to the Dealers Board, New Chrysler indicated that the protest concerned the "proposed establishment" of a dealership on Vernon Odom Boulevard, and that if Spitzer sold the property "there is no reason to proceed further with the [consolidated protests] because [New Chrysler's] notice of establishment had been rendered moot." New Chrysler then summarized:

> In short, Spitzer's sale of the property on which it intended to establish the [New Chrysler] dealership would eliminate the reason why [Fred] Martin and Falls protested in the first place: namely, that Spitzer proposed to open an additional [New Chrysler] dealership in their relevant market areas.

**{¶26}** The trial court denied Fred Martin's motion to dismiss, concluding, in part, that Spitzer could conceivably repurchase or rent the property located on Vernon Odom Boulevard. The matter then proceeded to a period of discovery.

### Fred Martin's Motion for Summary Judgment

**{¶27}** After a period of discovery, Fred Martin moved for summary judgment, asserting several arguments and sub-arguments in support of its position that it was entitled to judgment as a matter of law on Spitzer's claims against it. The majority of Fred Martin's arguments were premised on its contention that the Agreement:

> concerns Spitzer franchises that no longer exist, a manufacturer that no longer exists, and its subject is 'relocations' under O.R.C. § 4517.50-57, et. seq. that are not at issue in the Fred Martin protest that Spitzer seeks to enjoin and claim damages from.

Fred Martin also argued that it was entitled to summary judgment on its counter-claim for declaratory judgment. This Court will summarize Fred Martin's main arguments in support of its motion for summary judgment in turn.

{¶28} First, Fred Martin argued that it only agreed to waive its right to protest the "relocation" of a Spitzer dealership on Vernon Odom Boulevard, not the "establishment" of a new Spitzer Chrysler/Jeep/Dodge dealership on Vernon Odom Boulevard. Fred Martin asserted that the terms "relocation" and "establishment" are legally distinct under R.C. 4517.50. Fred Martin also asserted that the letter of intent it received from New Chrysler specifically referred to the "establishment" of a Spitzer dealership on Vernon Odom Boulevard, not a relocation. Fred Martin then asserted several sub-arguments in support of its position, including that it could not be a "relocation" as a matter of law because Spitzer's franchise agreement was terminated during the bankruptcy proceedings and, therefore, there was no franchise to relocate. Additionally, Fred Martin cited an affidavit from the records custodian at the Dealers Board who averred that Fred Martin only protested Spitzer's attempt to "establish" a dealership on Vernon Odom Boulevard, and that there was no record of Fred Martin filing a protest of a "relocation[.]"

{¶29} Second, Fred Martin argued that the Agreement only contemplated the relocation of Fred Martin and Spitzer franchises with Old Chrysler, not New Chrysler, which was an entirely new entity following the bankruptcy proceedings. Fred Martin argued that, because the Agreement did not address franchise rights related to New Chrysler, it did not prohibit Fred Martin from protesting Spitzer's establishment of a new motor vehicle dealership with New Chrysler.

{¶30} Third, Fred Martin argued that Spitzer had no right to operate any Chrysler franchise at the Vernon Odom Boulevard location beyond July 31, 2010, that is, beyond 18 months after Spitzer relocated and consolidated its Chrysler/Jeep dealership with its Dodge dealership. In

support of its argument, Fred Martin cited discovery responses from Spitzer wherein Spitzer indicated that it relocated its Chrysler/Jeep dealership to its Dodge dealership on Vernon Odom Boulevard in January 2008. Fred Martin asserted that New Chrysler sent the notice of intent to Fred Martin on November 22, 2010, which was well beyond the 18 months that Spitzer was permitted to relocate to Vernon Odom Boulevard under the terms of the Agreement.

{¶31} Fourth, Fred Martin argued that, even if the Agreement applied, Spitzer could not prove that it suffered damages as a proximate result of Fred Martin's actions. Fred Martin argued that the Falls protest, which remained pending at the time Fred Martin filed its motion for summary judgment, independently prevented Spitzer from operating a dealership until the Dealers Board issued a decision regarding that protest. Fred Martin also argued that, even if Spitzer could operate a franchise while the Falls protest remained pending (which it could not), Spitzer itself agreed to stay the consolidated protest proceedings until the federal litigation concluded. Fred Martin further argued that it did not (and could not) protest Spitzer's establishment of a dealership on Arlington Road because New Chrysler had not issued a letter of intent regarding that location. Thus, Fred Martin argued, it took no action that caused Spitzer to suffer damages.

{¶32} Spitzer opposed Fred Martin's motion for summary judgment. In doing so, Spitzer asserted that Old Chrysler's bankruptcy was unforeseen by the parties at the time they executed the Agreement. Spitzer asserted that, had the parties predicted the economic downturn and Old Chrysler's bankruptcy:

> [p]robably, they would have put into the [Agreement] various provisions that covered such an eventuality. That is the nature of contracts. The parties cover expected contingencies. But, as the parties now agree, the downturn was *not predicted*. So, the [Agreement] does not cover the occurrences that eventually happened.

(Emphasis sic.) Spitzer asserted that, "[w]hen unforeseen occurrences happen, the courts carry out the spirit of the contract taking into consideration later circumstances that the parties did not foresee."

{¶33} Spitzer then argued that genuine issues of material fact existed, including: (1) whether the parties intended the identity of the vehicle manufacturer (i.e., Old Chrysler) to be a material term of the Agreement; (2) what the parties intended the word "relocation" to mean in the Agreement; (3) whether the Falls protest barred Spitzer's claim for damages; and (4) whether Fred Martin's protest proximately caused Spitzer to suffer damages.

{¶34} The trial court denied Fred Martin's motion for summary judgment. First, the trial court concluded that the Agreement was ambiguous because it did not indicate that Old Chrysler (which was not a party to the Agreement but had to approve the proposed relocations per the Agreement) included its successors and assigns, and did not "indicate where things stand between the parties should [Old Chrysler] not grant approval, or no longer exist under that name." Second, the trial court noted that Fred Martin's protest included the terms "establishment" and "proposed relocation." As a result, the trial court determined that a jury could reasonably conclude that Fred Martin considered it a "relocation" when it filed its protest.

{¶35} Additionally, the trial court rejected Fred Martin's argument that the Agreement only applied to franchise activities between Spitzer and Old Chrysler. The trial court also rejected Fred Martin's argument that Spitzer had no right to locate any Chrysler franchise on Vernon Odom Boulevard beyond July 31, 2010, that is, beyond 18 months after Spitzer relocated to Vernon Odom Boulevard per the Agreement. Regarding the latter, the trial court determined that the Agreement did not include a specific deadline for Spitzer to relocate to Vernon Odom Boulevard; it only indicated that Spitzer's relocation was to be "for a period not to exceed eighteen months[.]"

**{¶36}** The trial court ultimately concluded that genuine issues of material fact existed as to whether Spitzer complied with the Agreement, and as to whether Fred Martin breached the Agreement. Accordingly, the trial court denied Fred Martin's motion for summary judgment.

## The Jury Trial & Post-Trial Motions

**{¶37}** The matter then proceeded to a multi-day jury trial on Spitzer's claim for damages for breach of contract. At trial, Spitzer claimed to have suffered about $13.1 million in lost profits based upon its inability to operate a dealership on Arlington Road in Green. The jury ultimately returned a verdict in favor of Spitzer. Specifically, the jury determined that: (1) Fred Martin breached the Agreement by filing its protest with the Dealers Board; (2) Spitzer substantially performed its obligations under the Agreement; (3) Fred Martin's breach of the Agreement proximately caused Spitzer to suffer damages; and (4) Spitzer was entitled to $5,750,000 in compensatory damages.

**{¶38}** After trial, the trial court denied Fred Martin's request for declaratory judgment. The trial court granted Spitzer's request for declaratory judgment, declaring:

> Defendant, Fred Martin Motor Company, has contractually irrevocably waived, relinquished and surrendered forever its statutory rights regarding protest of the establishment of Spitzer Autoworld Akron, LLC's Chrysler/Jeep/Dodge dealership at a location within a mile of the Arlington Road exit of Interstate 77 in the City of Green, Ohio (the "Green Location"). The rights irrevocably waived, relinquished and surrendered forever by Fred Martin are: 1) the right to notice of establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.50; 2) the right to protest the establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.50; and 3) the right to a hearing before the Motor Vehicle Dealers Board regarding the establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.57.
>
> Defendant, Fred Martin Motor Company is contractually obligated to execute any and all documents necessary to consent to the establishment of Spitzer Autoworld Akron, LLC's Chrysler/Jeep/Dodge dealership at a location within a mile of the Arlington Road exit of Interstate 77 in the City of Green, Ohio.

The trial court also enjoined Fred Martin "from filing a protest of the establishment of Spitzer Autoworld Akron, LLC's Chrysler/Jeep/Dodge dealership at a location within a mile of the Arlington Road exit of Interstate 77 in the City of Green, Ohio."

{¶39} Fred Martin moved for judgment notwithstanding the verdict or, alternatively, a new trial, which the trial court summarily denied. Spitzer moved for prejudgment interest, which the trial court denied on the basis that Spitzer's motion was untimely. The trial court also held that, even if Spitzer's motion was timely, Spitzer was not otherwise entitled to prejudgment interest.

{¶40} Fred Martin now appeals, raising three assignments of error for this Court's review in Case No. 30624. Spitzer has cross-appealed, raising one assignment of error in Case No. 30643. This Court will address Fred Martin's assignments of error first.

## II.

### FRED MARTIN'S ASSIGNMENT OF ERROR I

BECAUSE [SPITZER'S] CLAIMS FOR CONTRACTUAL DAMAGES AND DECLARATORY RELIEF WERE NOT LEGALLY VIABLE, THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY DENYING [FRED MARTIN'S] REQUESTS FOR DISMISSAL, SUMMARY JUDGMENT, A DIRECTED VERDICT, AND JUDGMENT NOTWITHSTANDING THE VERDICT.

{¶41} In its first assignment of error, Fred Martin argues that the trial court erred by denying its motion to dismiss, motion for summary judgment, motion for directed verdict, and motion for judgment notwithstanding the verdict. For the following reasons, this Court overrules Fred Martin's first assignment of error.

{¶42} "To prevail on a claim of breach of contract, [a party] must prove 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Kunkle v. Akron Mgt. Corp.*, 2005-Ohio-5185, ¶ 18 (9th Dist.), quoting *Preferred*

*Capital, Inc. v. Sturgil*, 2004-Ohio-4453, ¶ 11 (9th Dist.). "These elements must be proven by a preponderance of the evidence." *Johnson v. CBRE, Inc.*, 2023-Ohio-3518, ¶ 42 (9th Dist.).

**{¶43}** "When construing a contract, a court's principal objective is to determine and give effect to the parties' intent." *Id.* at ¶ 43. "It is well-settled that contractual responsibilities may only be ascertained from the plain language of the contract itself, and when the terms of the contract are clear, the court shall not look beyond the plain language to determine the parties' intent." *Id.*

**{¶44}** "The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal." *Gotham v. Basement Care, Inc.*, 2019-Ohio-3872, ¶ 8 (9th Dist.), quoting *Watkins v. Williams*, 2004-Ohio-7171, ¶ 23 (9th Dist.). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. "If the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact." *Tera, LLC v. Rice Drilling D, LLC*, 2023-Ohio-273, ¶ 44 (7th Dist.).

**{¶45}** Fred Martin argues that the trial court should have granted judgment in its favor because the Agreement was unambiguous, and it did not breach the Agreement as a matter of law. Fred Martin also argues that, even if it did breach the Agreement, its breach did not proximately cause Spitzer to suffer damages. Fred Martin concludes that the trial court, therefore, should have granted judgment in its favor. Fred Martin asserts several arguments in support of its position, which this Court will briefly summarize.

**{¶46}** First, Fred Martin argues that the Agreement indicated that Spitzer would relocate to Vernon Odom Boulevard only until August 2009 (i.e., 18 months after Spitzer relocated and started operating out of the Vernon Odom Boulevard location in February 2008). Fred Martin

asserts that, because it did not file its protest until December 2010, it did not breach the Agreement as a matter of law.

**{¶47}** Second, Fred Martin argues that Spitzer voluntarily entered into the Stay Agreement, which effectively prohibited Spitzer from relocating to Green through the Summer of 2022, that is, until the federal litigation concluded and the Dealers Board issued a decision regarding the consolidated protests.

**{¶48}** Third, Fred Martin argues that it was entitled to judgment as a matter of law because the Agreement only covered "relocations[,]" not the "establishment" of a new Spitzer dealership. Fred Martin argues that, because the notice it received from New Chrysler only referred to the "establishment" of a Spitzer dealership on Vernon Odom Boulevard, and because Fred Martin only filed a protest relative to this "establishment[,]" it did not–and could not–breach the Agreement.

**{¶49}** Fourth, Fred Martin argues that it was entitled to judgment as a matter of law because Spitzer could not prove that any actions of Fred Martin caused Spitzer to suffer damages. Fred Martin argues that it did not–and could not–file a protest relative to the Arlington Road location because New Chrysler never notified Fred Martin of its intent to establish a Spitzer dealership at that location. Fred Martin also argues that it was Spitzer's own business decision to not initially construct a dealership at the Arlington Road location in 2008, and that Fred Martin is not liable for the repercussions stemming from Old Chrysler's bankruptcy. Fred Martin further argues that the Falls protest remained pending at the same time as its protests, so it "cannot be blamed for even a single penny of lost profits at Green."

**{¶50}** Fifth, Fred Martin argues that Spitzer "pulled a classic bait-and-switch at trial" by representing to the jury that this case was "all about Green" when Fred Martin only filed a protest relative to the Vernon Odom Boulevard location.

**{¶51}** This Court concludes that the trial court did not err by determining that the Agreement was ambiguous and, therefore, not issuing a judgment in favor of Fred Martin as a matter of law. Simply put, ambiguities existed in the Agreement that created questions of fact for a jury to decide.

**{¶52}** As noted, Fred Martin argues that the Agreement required Spitzer to cease operating at the Vernon Odom Boulevard location in August 2009, meaning Fred Martin did not breach the Agreement when it filed its protest in December 2010. But the Agreement simply provided that Spitzer would relocate to Vernon Odom Boulevard "for a period not to exceed eighteen months[.]" Under Fred Martin's theory, Old Chrysler's bankruptcy and its rejection of Spitzer's franchise agreement had no bearing on the 18-month provision: time continued to run despite the fact that Spitzer could not legally sell new cars out of the Vernon Odom Boulevard location after June 2009.

**{¶53}** Although Spitzer's interpretation of the 18-month period in the Agreement may be a reasonable interpretation, it is not the only reasonable interpretation. The Agreement as a whole makes clear that the parties entered into a contract to address a situation wherein they would be competing within close proximity to each other "for a period not to exceed eighteen months" until Spitzer completed construction of its dealership on Arlington Road in Green. *See Saunders v. Mortensen*, 2004-Ohio-24, ¶ 16 ("[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole."). In doing so, the parties expressly agreed to "irrevocably waive, relinquish, and surrender forever . . . [a]ny and all right to protest the proposed relocation . . . ." Reading the Agreement as a whole, it is unclear whether the expiration of 18 consecutive months entitled Fred Martin to file its protest. *See Pierson v. White Pine Ins. Co.*, 2022-Ohio-2702, ¶ 24 (4th Dist.), quoting *Sauer v. Crews*, 2014-Ohio-3655, ¶ 13 ("To determine

whether a contract is ambiguous, courts must consider the contract 'as a whole,' and not simply 'detached or isolated parts thereof.'"). Simply put, the Agreement is ambiguous in this regard. *Lager*, 2008-Ohio-4838, at ¶ 16 ("Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation."). As a result, "ascertaining the parties' intent constitute[d] a question of fact" for the jury to resolve. *Tera, LLC*, 2023-Ohio-273, at ¶ 44 (7th Dist.).

{¶54} Even if this Court were to accept Fred Martin's assertion that the "period not to exceed eighteen months" expired in August 2009, the Agreement did not expressly indicate that time was of the essence. "When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential *in order to enable him to require performance from the other party.*" (Emphasis sic.) *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 378 (1993), quoting 6 Williston on Contracts 3d, Section 846 (1962). "If time is not of the essence and the obligor has substantially complied with the terms of the contract, the obligee's duty to perform is not discharged." *Lake Ridge Academy* at 186. As this Court has stated, "time of performance is not of the essence in a contract unless made so by its terms, or by act of the parties.'" *Sharp v. Andisman*, 2010-Ohio-4452, ¶ 20 (9th Dist.), quoting *Tiefenthaler v. Tiefenthaler*, 2002-Ohio-6438, ¶ 15 (5th Dist.). Whether the actions of the parties indicated that time was of the essence was an issue for the jury to decide. *See Pohle v. Lord*, 2007-Ohio-55, ¶ 24 (5th Dist.).

{¶55} Additionally, while Fred Martin goes to great lengths to convince this Court that– as a matter of law–its protest only related to the "establishment" of a new Spitzer dealership on Vernon Odom Boulevard (and not a "relocation" contemplated in the Agreement), its protest specifically stated that the grounds for its protest of Spitzer's "establishment" of a dealership on

Vernon Odom Boulevard "are that Chrysler does not have good cause for the *proposed relocation*." (Emphasis added.) Thus, Fred Martin's argument is somewhat confounding; it emphasizes the fact that "establishment" and "relocation" are distinct terms with different meanings, yet it used both terms in its protest seemingly interchangeably. As the trial court found below, a question of fact existed as to whether Fred Martin considered its protest a protest of a relocation as provided under the Agreement.

{¶56} Lastly, this Court concludes that Fred Martin's argument that it was entitled to judgment as a matter of law because it did not proximately cause Spitzer to suffer damages lacks merit. "The question of proximate cause is one usually for the jury." *Patrick v. W. Union Tel. Co.*, 86 Ohio App. 365, 369 (9th Dist. 1949). "It is generally a mixed question of law and fact." *Id.* "But in a case where reasonable minds could not differ on the question of fact or the reasonable inferences to be drawn therefrom, it is the duty of the court to determine the question as a matter of law." *Id.* at 369-370. Here, factual issues precluded the trial court from entering judgment as a matter of law, including ascertaining the parties' intent. Reasonable minds could differ as to whether Fred Martin's filing of its protests caused Spitzer to suffer lost profits, such that judgment as a matter of law was not warranted.

{¶57} This Court is mindful of Fred Martin's numerous arguments in support of its position that it was entitled to judgment as a matter of law. Fred Martin essentially urges this Court to read certain provisions of the Agreement in isolation without considering the Agreement as a whole. The two-page Agreement, however, contained ambiguities that prevented the trial court from rendering judgment in favor of Fred Martin as a matter of law. *Tera, LLC*, 2023-Ohio-273, at ¶ 44 (7th Dist.) ("If the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact."). Accordingly, Fred Martin's first assignment of error is overruled.

FRED MARTIN'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SPITZER'S DECLARATORY JUDGMENT REQUEST AND DENYING FRED MARTIN'S DECLARATORY JUDGMENT REQUEST.

{¶58} In its second assignment of error, Fred Martin argues that the trial court erred by granting Spitzer's request for declaratory judgment, and by denying Fred Martin's competing request for declaratory judgment. For the following reasons, this Court overrules Fred Martin's second assignment of error.

{¶59} "In order to maintain an action for declaratory judgment, a party must show that a real controversy exists between the parties, which is justiciable in character, and that speedy relief is necessary to the preservation of rights, which may otherwise be impaired or lost." *Kuhar v. Medina Cty. Bd. of Elections*, 2006-Ohio-5427, ¶ 12 (9th Dist.). As the Ohio Supreme Court has stated, "the abuse-of-discretion standard applies to the review of a trial court's holding regarding justiciability; once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13.

{¶60} After trial, the parties briefed their respective positions on their requests for declaratory judgment. As noted above, the trial court denied Fred Martin's request for declaratory judgment. The trial court granted Spitzer's request for declaratory judgment, declaring:

> Defendant, Fred Martin Motor Company, has contractually irrevocably waived, relinquished and surrendered forever its statutory rights regarding protest of the establishment of Spitzer Autoworld Akron, LLC's Chrysler/Jeep/Dodge dealership at a location within a mile of the Arlington Road exit of Interstate 77 in the City of Green, Ohio (the "Green Location"). The rights irrevocably waived, relinquished and surrendered forever by Fred Martin are: 1) the right to notice of establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.50; 2) the right to protest the establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.50; and 3) the right to a

hearing before the Motor Vehicle Dealers Board regarding the establishment of Spitzer's dealership at the Green location pursuant to Ohio Revised Code §4517.57.

Defendant, Fred Martin Motor Company is contractually obligated to execute any and all documents necessary to consent to the establishment of Spitzer Autoworld Akron, LLC's Chrysler/Jeep/Dodge dealership at a location within a mile of the Arlington Road exit of Interstate 77 in the City of Green, Ohio.

**{¶61}** In reaching this conclusion, the trial court noted that the jury found that Fred Martin breached the Agreement by filing its protest, and that Spitzer substantially performed its obligations under the Agreement. The trial court concluded that it accepted and adopted both of those findings. The trial court then addressed Fred Martin's request for declaratory judgment, which requested a declaration that:

the subject matter of the [Agreement] does not apply to the Dismissed-as-moot Protest or the Hypothetical Protest, and therefore cannot provide the basis for a breach of contract action or injunctive relief against Fred Martin for pursuing protest rights under R.C. 4517.50 in relation to the Dismissed-as-moot Protest or the Hypothetical Protest.

**{¶62}** The trial court found that Fred Martin's request for declaratory judgment was not consistent with the jury's factual findings, which the trial court had adopted.

**{¶63}** On appeal, Fred Martin argues that the trial court "answered the wrong question in issuing its declaratory judgment ruling." Fred Martin argues that the parties' requests for declaratory judgment did not pose the same questions that were posed to the jury. To that end, Fred Martin argues that the jury was asked whether Fred Martin breached the Agreement by filing a protest of New Chrysler's notice of its intent to establish a Spitzer dealership on Vernon Odom Boulevard. Fred Martin argues that the dispute presented to the trial court through the requests for declaratory judgment, on the other hand, was whether the Agreement prohibited a future protest if New Chrysler provides Fred Martin with a notice of its intent to establish a new Spitzer dealership in Green. Fred Martin argues that the latter was a legal question that required the trial court to

review and apply the Sixth Circuit's decision in *Fox Hill*, which addressed the effect of Old Chrysler's bankruptcy and arbitrations under Section 747. Fred Martin argues that the trial court failed to perform an analysis under *Fox Hill*. Fred Martin also argues that the trial court had certain stipulations before it regarding the nature and implications of Old Chrysler's bankruptcy, which the jury did not have at trial.

{¶64} Fred Martin's arguments lack merit. Throughout the underlying proceedings, Fred Martin consistently argued that the Agreement did not apply because the Agreement pertained to a relocation, not an establishment, of a Spitzer dealership. Fred Martin relied upon the legal conclusions reached in *Fox Hill* to support its argument that the Agreement did not apply because: (1) Old Chrysler ceased to exit post-bankruptcy; and (2) Old Chrysler terminated Spitzer's franchise agreement in bankruptcy, meaning any Chrysler/Jeep/Dodge dealership was necessarily an establishment of a new dealership and not a relocation of an existing dealership.

{¶65} While the jury and the trial court addressed different issues, they are not completely independent as Fred Martin suggests. In rendering a verdict in favor of Spitzer, the jury rejected Fred Martin's numerous arguments that the Agreement did not prohibit it from filing the underlying protest. As noted above, the Agreement reflects that the parties agreed that Spitzer would temporarily relocate its Chrysler/Jeep dealership on East Market Street to its Dodge dealership on Vernon Odom Boulevard while Spitzer constructed a new, consolidated dealership on Arlington Road. To find that the Fred Martin breached the Agreement by filing a protest (as the jury did), and then to conclude that Fred Martin could still protest Spitzer's establishment of a dealership Arlington Road would ignore the jury's verdict as well as the purpose of the Agreement as a whole. *See Saunders*, 2004-Ohio-24, at ¶ 16 ("[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole."). Moreover, Fred Martin has not

explained how the stipulations the trial court had before it regarding the nature and implications of Old Chrysler's bankruptcy requires this Court to find that the trial court erred by granting Spitzer's request for declaratory judgment. *See* App.R. 16(A)(7). Fred Martin's second assignment of error is overruled.

FRED MARTIN'S ASSIGNMENT OF ERROR III

THE JURY'S VERDICT IN FAVOR OF [SPITZER] WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶66} In its third assignment of error, Fred Martin argues that the jury's verdict was against the manifest weight of the evidence. For the following reasons, this Court overrules Fred Martin's third assignment of error.

{¶67} "We apply the same manifest weight standard in both criminal and civil cases." *Wheatley v. Howard Hanna Real Estate Servs.*, 2015-Ohio-2196, ¶ 11 (9th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. This Court has explained the manifest weight standard of review as follows:

> When conducting a manifest weight review, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [the judgment] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Moreover, in carrying out this review, we must make "[e]very reasonable presumption * * * in favor of the judgment" and interpret ambiguous elements of the record in a way that is "most favorable to sustaining the trial court's verdict and judgment.'" *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). As with criminal cases, a reversal on manifest weight grounds in civil cases is likewise "reserved for the exceptional case in which the evidence weighs heavily against the judgment." *A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 5, citing *Otten* at 340.

(Alterations sic.) *Wheatley* at ¶ 11.

{¶68} Here, Fred Martin asserts that Spitzer's trial strategy was to vilify Fred Martin's owner and to appeal to the jury's sympathy and compassion. Fred Martin also asserts that Spitzer's trial strategy distracted the jury from the "gaping holes" in Spitzer's case. Fred Martin further asserts that it complied with the Agreement, and that it was not responsible for the fact that Spitzer never opened its dealership in Green.

{¶69} Aside from its recitation of the standard of review, Fred Martin's argument is two paragraphs long and contains one citation to the record. Specifically, Fred Martin cites one sentence from Spitzer's closing argument wherein Spitzer's counsel referred to Fred Martin's lawyers as "slick[.]" Fred Martin has not otherwise supported its assignment of error with citations to the record or the relevant law. *See* App.R. 16(A)(7).

{¶70} As evidenced by the verdict, the jury chose to believe the evidence presented by Spitzer. "When conflicting evidence is presented at a jury trial, a judgment is not against the manifest weight of the evidence simply because the jury chose to believe one side over the other." *Long v. Vamper*, 2005-Ohio-267, ¶ 9 (9th Dist.). Given the limited argument presented, this Court cannot say that Fred Martin has established that this is the exceptional case in which the evidence weighs heavily against the judgment. *Otten*, 33 Ohio App.3d at 340. Fred Martin's third assignment of error is overruled.

SPITZER'S CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING [SPITZER'S] MOTION FOR PREJUDGMENT INTEREST.

{¶71} In its cross-assignment of error, Spitzer argues that the trial court erred by denying its motion for prejudgment interest. This Court disagrees.

{¶72} "R.C. 1343.03(A) establishes interest rates for both prejudgment and post-judgment interest in actions based on contract." *Magnum Steel & Trading, L.L.C. v. Mink*, 2013-Ohio-2431,

¶ 55 (9th Dist.), quoting *Rutledge v. Lilley*, 2010-Ohio-2275, ¶ 10 (9th Dist.). Regarding prejudgment interest, R.C. 1343.03(A) provides, in part, that "when money becomes due and payable upon any . . . instrument of writing, . . . the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code . . . ." "Once a plaintiff prevails on a contract claim, the trial court must award the party prejudgment interest." *Desai v. Franklin*, 2008-Ohio-3957, ¶ 31 (9th Dist.). But as this Court has explained, "[b]y the explicit terms of R.C. 1343.03(A), prejudgment interest is limited to those contracts that provide for a payment of money that the breaching party failed to pay." *RPM, Inc. v. Oatey Co.*, 2005-Ohio-1280, ¶ 64 (9th Dist.).

{¶73} Here, the trial court denied Spitzer's motion for prejudgment interest on the basis that it was untimely and that, even if it was timely, Spitzer was not entitled to prejudgment interest based upon this Court's precedent in *RPM, Inc. v. Oatey Co.* Assuming without deciding that Spitzer timely filed its motion for prejudgment interest, this Court concludes that the trial court did not err by denying Spitzer's motion for prejudgment interest. Consistent with this Court's precedent in *RPM, Inc. v. Oatey Co.*, there was no money "due and payable" under the Agreement. *See RPM, Inc.* at ¶ 68. Consequently, the trial court had no authority to award Spitzer prejudgment interest. *Id.* at ¶ 69. Spitzer's cross-assignment of error is overruled.

III.

{¶74} Fred Martin's assignments of error in Case No. 30624 are overruled. Spitzer's cross-assignment of error in Case No. 30634 is overruled. The judgments of the Summit County Court of Common Pleas are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶75} I respectfully dissent from the judgment of the majority. There is no basis in law to support the trial court's judgment in this matter. The heart of this dispute is a protest filed by Fred Martin pursuant to R.C. 4517.50 after it received a notice from New Chrysler stating only that it intended to approve the establishment of the Chrysler, Jeep, and Dodge vehicle lines at Spitzer's Vernon Odom Boulevard location. While Fred Martin's notice of protest mentioned both establishment and relocation, the only notice that New Chrysler provided was the notice of

establishment at Vernon Odom Boulevard. Accordingly, that is all Fred Martin could protest. *See* R.C. 4517.50(A).

{¶76} Notably, the parties' previous agreement only referenced Fred Martin's waiver of the ability to protest relocation. That agreement repeatedly cites to R.C. 4517.50, which does not use those two terms interchangeably. Considering the entirety of the agreement, it is difficult to conclude that the parties were not referring to the terms as used in the statute given their repeated references to that same statute. Thus, I would conclude that, even assuming the agreement was still applicable after the demise of Old Chrysler, the agreement said nothing about Fred Martin's ability to protest any establishment of a new motor vehicle dealership.

{¶77} Further, even if Fred Martin could not file the protest it did in light of the previous agreement, it is unclear how the evidence supports that this protest, limited to the establishment of a dealership at Vernon Odom Boulevard, caused Spitzer damages and prevented it from developing a dealership in Green. First, Falls also filed a similar protest and so it would be inaccurate to conclude that Fred Martin would be solely responsible for any delay. Moreover, all the parties, including Spitzer, agreed to a stay in the proceedings before the Dealers Board, thereby also leading to delay. In other words, Spitzer's own actions caused a delay. Finally, there could be no ongoing or future damages as Spitzer sold the Vernon Odom Boulevard location in 2015 rendering the protests themselves moot. In fact, ultimately, the Dealers Board dismissed the protests as moot.

{¶78} Given all of the above, I respectfully dissent from the judgment of the majority.

APPEARANCES:

LAWRENCE R. BACH, Attorney at Law, for Appellant/Cross-Appellee.

PAUL W. FLOWERS and KENDRA N. DAVITT, Attorneys at Law, for Appellant/Cross-Appellee.

ANTHONY B. GIARDINI, ERIC N. POPLAR, and DANIEL D. MASON, Attorneys at Law, for Appellee/Cross-Appellant.

RONALD S. KOPP and EMILY K. ANGLEWICZ, Attorneys at Law, for Appellee/Cross-Appellant.